**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **WOLVERINE BARCODE IP, LLC,** | |
| **Plaintiff,** | **Civil Action No: 2:26-cv-00023** |
| **v.** | **PATENT CASE** |
| **POPEYES LOUISIANA KITCHEN, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**DEFENDANT POPEYES LOUISIANA KITCHEN, INC.'S
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ...................................... 2

III.   STATEMENT OF THE ISSUE..................................................................... 2

IV.   STATEMENT OF THE FACTS ................................................................... 2

V.    LEGAL STANDARD.................................................................................... 5

VI.   ARGUMENT................................................................................................. 6

        A.      Wolverine Barcode Fails to Plead Direct Infringement....................... 6

        B.      Divided Infringement Issues Preclude Direct Infringement by Popeyes.............. 7

        C.      Wolverine Barcode's Conclusory Indirect Infringement Allegations Fail ........... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)..................................................................................6, 8, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................5, 6, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................6, 10

*Cuvillier v. Sullivan*,
503 F.3d 397 (5th Cir. 2007) ............................................................................................5

*Desenberg v. Google, Inc.*,
392 F. App'x 868 (Fed. Cir. 2010) ...................................................................................6

*Laitram Corp. v. Rexnord, Inc.*,
939 F.2d 1533 (Fed. Cir. 1991).........................................................................................6

*LBS Innovations, LLC v. Nokia USA Inc.*,
No. 2:15-CV-1972-JRG, 2016 WL 3407611 (E.D. Tex. June 21, 2016) .................................9

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)..........................................................................................6

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2017)......................................................................................8, 9

*Mullen Indus. LLC v. Samsung Elecs. Co.*,
No. 2:24-CV-00049-JRG, 2024 WL 4870768 (E.D. Tex. Nov. 21, 2024)..........................8, 9

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018).....................................................................................1, 10

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
No. CV 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016)..........................................6

*Schumer v. Lab'y Computer Sys., Inc.*,
308 F.3d 1304 (Fed. Cir. 2002).......................................................................................6, 7

**Other Authorities**

FED. R. CIV. P. 12...................................................................................................................5, 6

ii

## I.    INTRODUCTION

The Court should dismiss Wolverine Barcode's Complaint because Wolverine Barcode fails to plausibly allege infringement, either direct or indirect. Wolverine Barcode's allegations of direct infringement are deficient in two ways. First, its allegations of direct infringement by Popeyes are not plausible. Wolverine Barcode's '689 Patent requires scanning two barcodes—a "product barcode," located on a product, and a "User ID Barcode," identifying a user. '689 Patent, cl. 1. Because Wolverine Barcode knows that no "product barcode" is scanned at a Popeyes restaurant, Wolverine Barcode points to the barcode on a bottle of Popeyes dipping sauce sold at retail stores like Walmart—not at Popeyes restaurants. But for the "User ID Barcode," Wolverine Barcode points to the QR code that Popeyes *restaurant* customers can scan to earn rewards points at the register. Wolverine Barcode's allegations are contradictory and should be dismissed for failure to plausibly allege direct infringement.

Second and separately, the Court should dismiss Wolverine Barcode's Complaint for failure to plausibly allege divided infringement. The claims of the '689 Patent require action by the store or system administrator (e.g., limitation 1(d) which requires "establishing a User Account in a User Vendor Management Server"), and also action on behalf of the customer (e.g., limitation 1(f) which requires "conducting purchases at vendors"). Accordingly, Wolverine Barcode's claim charts identify the customer as performing certain claim limitations but Popeyes performing others. But Wolverine Barcode's Complaint does not allege that Popeyes exercises the requisite "direction or control" over its customers and does not allege that Popeyes and its customers form a "joint enterprise." These failures are fatal to the plausibility of Wolverine Barcode's allegations.

Indirect infringement requires direct infringement. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018). Wolverine Barcode has not plausibly alleged an underlying act of direct infringement. The Court should dismiss the Complaint.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

On January 9, 2026, Wolverine Barcode filed its Complaint, alleging that Popeyes infringes claims 1–3 of the '689 Patent. Dkt. 1 ¶¶ 6–12.

## III.      STATEMENT OF THE ISSUE

1.      Wolverine Barcode has not plausibly alleged direct infringement, because its Complaint does not plausibly allege that Popeyes meets several claim limitations. Without an underlying act of direct infringement, there can be no indirect infringement. Should the Court dismiss Wolverine Barcode's Complaint?

## IV.      STATEMENT OF THE FACTS

The '689 Patent describes "the present invention" as relating to "offline commerce transactions using the user ID Barcode as the user identifier for purchasing goods priced at micro payment or non-micro payment level [*sic*] using the fund or credit limit available at the user's account in the server identified as a User Vendor Management Server (UVM)." '689 Patent at 1:17–21. According to the patent's background section, it is impractical for vendors to accept credit card payments for "micro payments" (e.g., five or ten cents) because the processing cost is too high. *Id.* at 1:26–31. To overcome this problem, the '689 Patent describes a method in which users may use a barcode (on a smartphone or credit card) associated with a user account that has been preloaded with funds to facilitate payments at participating vendors without involving a third party to process those transactions. *Id.* at 2:34–3:50.

The '689 Patent has three claims, one independent claim and two dependent claims, all of which are method claims. '689 Patent, cls. 1–3. Independent claim 1, the only claim Wolverine Barcode charted, claims the following method:

> 1. A method for conducting offline electronic commerce transactions having a
> vendor barcode scanner and a vendor cash register comprising:

2

(a) providing a personal code to a person for their use to purchase goods;

(b) converting said personal code into barcode format to form a User ID Barcode, said User ID Barcode corresponding to said personal code and including at least one special character to distinguish the barcode as a User ID Barcode from a product barcode;

(c) storing said personal code in said User ID Barcode format by said person for use to purchase goods and storing said personal code in a User Vendor Management Server to permit purchases to be made at a vendor;

(d) establishing a User Account in a User Vendor Management Server corresponding to said personal code;

(e) depositing funds in said User Account to establish a credit limit;

(f) conducting purchases at vendors each having a vendor server wherein each purchase includes scanning product barcodes including product price and said User ID Barcode with a product barcode scanner at the vendor cash register and transmitting both product barcodes and User ID Barcode to said vendor server;

(g) detecting the User ID Barcode at the vendor server and forwarding the ID Barcode and purchase price to said User Vendor Management Server;

(h) comparing the purchase price with the funds in said User Vendor Management Server to determine if there are available funds within the credit limit in the User Vendor Management Server account, and if there are, sending an approval signal to the vendor server;

(i) forwarding the approval signal to the vendor cash register; and

(i) [*sic*] repeating steps (f) through (i) for subsequent purchase transactions using said User ID Barcode.

'689 Patent, claim 1.

As the claim language itself recites, certain steps—like "(f) conducting purchases at vendors"—are performed by customers, and other steps—like "(a) providing a personal code to a person for their use to purchase goods"—are not performed by customers. Wolverine Barcode's allegations are vague and inconsistent as to whether Popeyes or a Popeyes customer directly infringes the asserted '689 Patent claims or how they are infringed. Without specifying which actor performs the claimed method, Wolverine Barcode alleges that Popeyes "maintains, operates, and

3

administers systems, products, and services that conducting [sic] offline transactions that use a barcode as a method of personal identification that infringes one or more of claims 1–3 of the '689 patent." Dkt. 1 at ¶ 8. Confusing the claimed method claims with system claims, Wolverine Barcode alleges that Popeyes "put the inventions claimed by the '689 Patent into service (i.e., used them)." *Id.* The Complaint then begins describing indirect infringement theories in which Popeyes allegedly induced or contributed to the infringement of the '689 Patent's method claims when it "actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies) . . . on how to use its products and services such as to cause infringement of one or more of claims of the '689 patent." Dkt. 1 at ¶¶ 10–11.

The claim chart attached as Exhibit B to the Complaint fails to resolve the issue. For some steps Wolverine Barcode points to acts allegedly performed by Popeyes Rewards:

| Step 1(a) | For example, Popeyes Rewards gives a customer a unique digital ID number so they can use it when making a qualifying purchase. |
|---|---|
| Step 1(c) | For example, Popeyes Rewards saves the customer's unique ID number both as a barcode on the customer's device and in its online computer systems. This allows the ID to be used later to make and track eligible purchases at a Popeyes restaurant. |
| Step 1(d) | For example, Popeyes Rewards creates a customer rewards account in its online computer system and links that account to the customer's unique ID number. |
| Step 1(g) | For example, Popeyes Rewards detects the customer's User ID Barcode in the online computer system or servers and then sends both the User ID and the price of any |
| Step 1(h) | For example, Popeyes Rewards compares the price of the modifier with the available redeemable points in the online system or server account. If there are enough points, the system sends an in-restaurant receipt to the servers. |

Dkt. 1-2 at 5, 8–9, 10–11, 16–17, 19–20 (highlighting added). For other steps, the claim chart identifies acts performed by a customer:

| Step 1(f) | For example, when a customer makes a purchase at a Popeyes location, the in-store system scans both the product barcodes (including the price of any modifiers) and the customer's User ID Barcode or QR code. Both the product information and the User ID are then sent to the online computer system or servers. |
|---|---|

Dkt. 1-2 at 5, 12–13 (highlighting added). For yet other steps, the claim chart is unclear who performs the action:

| Step 1(e) | For example, the customer earns 10 reward points for every dollar spent in their Popeyes Rewards account, and these points can later be redeemed for free or discounted items. |
|---|---|

Dkt. 1-2 at 11 (highlighting added).

Wolverine Barcode fails to provide sufficient explanation of its infringement theory (regardless of the actor(s) involved) for several claim elements and only parrots the claim language or ignores it altogether.

## V.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).

For a Complaint to survive a motion to dismiss, it must set out "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Federal Circuit "precedent requires that a complaint place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013)). A claim for direct infringement requires plausible allegations that the accused products practice each of the limitations found in at least one asserted claim. *Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. CV 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (conducting limitation by limitation analysis). "The failure to meet a single limitation is sufficient to negate infringement of [a] claim." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

"Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). Failure to sufficiently plead divided infringement is grounds for dismissal under Rule 12. *Desenberg v. Google, Inc.*, 392 F. App'x 868, 872 (Fed. Cir. 2010).

## VI.    ARGUMENT

### A.    Wolverine Barcode Fails to Plead Direct Infringement

Wolverine Barcode's direct infringement allegations are implausible. To survive a 12(b)(6) motion to dismiss, a party claiming direct infringement must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lifetime*, 869 F.3d at 1376 (quoting *Iqbal*, 556 U.S. at 678). This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. However, "[a] method claim is infringed only by one practicing the patented method." *Schumer v. Lab'y Computer Sys., Inc.*, 308 F.3d 1304, 1309 n.3 (Fed. Cir. 2002).

Wolverine Barcode has not plausibly alleged that Popeyes is practicing the patented method. Claim 1 describes two different types of barcodes that are used simultaneously: "a User ID Barcode," which identifies a user, and a "product barcode" which is located on a product. Dkt. 1-2 at 6. Claim limitation 1.6 (step (f)) similarly requires "conducting purchases at vendors . . . wherein each purchase includes scanning product barcodes including product price and said User ID Barcode with a product barcode scanner at the vendor cash register and transmitting both product barcodes and User ID Barcode to said vendor server." *See, e.g.*, Dkt. 1-2 at 12.

While Wolverine Barcode appears to point to Popeyes' Rewards App for the "User ID Barcode," it points to a Popeye's dipping sauce bottle sold at Walmart for the "product barcode," as the URL even says "Walmart." *See* Dkt. 1-2 at 8. Wolverine Barcode does not allege that Popeyes retail dipping sauce bottles can be bought at Popeyes restaurants; they cannot. Wolverine Barcode also does not allege that Popeyes customers can buy retail dipping sauce bottles with Rewards points; they cannot. The sauce bottles are only sold at retail stores such as Walmart, where users cannot use their Popeyes Rewards points.[1] Thus, Wolverine Barcode does not plausibly allege that Popeyes directly infringes claim 1 of the '689 Patent.

### B.   Divided Infringement Issues Preclude Direct Infringement by Popeyes

Claim 1 requires multiple actors and divided infringement, but Wolverine Barcode's Complaint does not plausibly allege divided infringement by multiple actors. "[T]o meet the pleading standard for divided infringement by the combined acts of multiple actors, the complaint must plead 'facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite direction and control over the other's

---

[1] Users also cannot "conduct purchases" of items using their Popeyes Rewards points. Instead, the Rewards points are used to redeem coupons, and the Rewards QR Code is scanned not to conduct a purchase, but to earn points after purchases are made.

performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party.'" *Mullen Indus. LLC v. Samsung Elecs. Co.*, No. 2:24-CV-00049-JRG, 2024 WL 4870768, at *3 (E.D. Tex. Nov. 21, 2024) (quoting *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2017)).

The '689 Patent plainly requires multiple actors. For example, step (a), which recites "providing a personal code to a person for their use to purchase goods," is not performed by the "person" that "purchase[s] goods." '689 Patent, claim 1. But step (f), "conducting purchases at vendors," is performed by the person purchasing the good. *Id.* And consistent with the plain claim language, Wolverine Barcode's claim chart implicates multiple actors. For instance, for steps (c), (d), (g), and (h), Wolverine Barcode points to acts carried out by the Popeyes Rewards Program itself: "**Popeyes Rewards saves** the customer's unique ID number . . ." (step c); "**Popeyes Rewards creates** a customer rewards account an online account" (step d); "**Popeyes Rewards detects**" (step g); and "**Popeyes Rewards compares**" (step h). Dkt. 1-2 at 9, 11, 16–17, 19–20 (emphasis added). But for step (f), the claim chart identifies activity by Popeyes' customers as satisfying the "conducting purchases at vendors" limitation: "**when a customer makes a purchase at a Popeyes location** . . . ." Dkt. 1-2 at 12 (emphasis added).

But despite relying on the activity of multiple actors to perform the method of claim 1, Wolverine Barcode "fails to plausibly plead sufficient facts to ground a joint infringement claim under [the Federal Circuit's] *Akamai* decision." *Lyda*, 838 F.3d at 1340. The Complaint does not (and cannot) allege that Popeyes is "a joint enterprise with" its customers. *Id*. Nor does Wolverine Barcode assert that Popeyes "directed or controlled" its customers' activities, such as their purchases. *Id*. Instead, the Complaint asserts in conclusory fashion that "but for [Popeyes'] actions" there would be no infringement, and Popeyes' "acts complained of herein caused those

8

claimed-invention embodiments as a whole to perform." Dkt. 1 ¶ 8. These allegations do not suggest that Popeyes directed or controlled its customers' actions.

Courts routinely dismiss direct infringement claims where, as here, the claimed method requires multiple actors and the patentee fails to plausibly allege joint infringement. *See, e.g.*, *Lyda*, 838 F.3d at 1340 (affirming motion to dismiss where divided infringement was not adequately pled); *Mullen*, 2024 WL 4870768, at *4. *Mullen* is instructive. In *Mullen*, the court found that:

> The '540 Patent requires multiple actors—a fact that Plaintiff does not seem to dispute. Therefore, this is a case of divided infringement . . . The Court finds that the Complaint does not plausibly plead a claim for divided infringement of the '540 Patent. The Complaint fails to allege that Defendants have the requisite "direction or control" over the other actors' performance. The Complaint fails to allege the existence of a joint enterprise.

2024 WL 4870768, at *3 (internal citations omitted).

Likewise, in *LBS Innovations,* Plaintiff went a step further than Wolverine Barcode does here, alleging that the defendant formed a joint enterprise with another entity. *LBS Innovations, LLC v. Nokia USA Inc.*, No. 2:15-CV-1972-JRG, 2016 WL 3407611, at *2 (E.D. Tex. June 21, 2016). "To prove the existence of a joint enterprise, Plaintiff must show: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Id.* Wolverine Barcode's Complaint contains no such allegations. Like in the cases described above, Wolverine Barcode "fails to plausibly plead sufficient facts to ground a joint infringement claim under [the Federal Circuit's] *Akamai* decision," and its direct infringement claims do "not satisfy the *Iqbal/Twombly* pleading standard." *Lyda*, 838 F.3d at 1340.

**C.  Wolverine Barcode's Conclusory Indirect Infringement Allegations Fail**

The Complaint also fails to allege indirect infringement. Wolverine Barcode has not

9

plausibly alleged an underlying act of direct infringement by Popeyes, by a Popeyes customer, or any other third-party actor. "It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement." *Nalco*, 883 F.3d at 1355. Here, Wolverine Barcode fails to adequately allege an underlying act of direct infringement.

The Complaint's statement that Popeyes "has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies) . . . on how to use its products and services such as to cause infringement of one or more of claims of the '689 Patent" is conclusory and need not be accepted as true on a motion to dismiss. *See Twombly*, 550 U.S. at 555 (citation omitted); *see also Iqbal*, 556 U.S. at 678–79. As shown above, Wolverine Barcode's allegations that Popeyes customers directly infringe is contradicted by Wolverine Barcode's own allegations that several steps of the method are performed by Popeyes Rewards. See Dkt. 1-2 at 5, 8–9, 10–11, 16–17, 19–20. The Complaint should be dismissed.

10

Dated: April 9, 2026                              Respectfully submitted,

                                      By:  */s/ Lance E. Wyatt, Jr.*
                                           Neil J. McNabnay
                                           Texas Bar No. 24002583
                                           mcnabnay@fr.com
                                           Lance E. Wyatt, Jr.
                                           Texas Bar No. 24093397
                                           wyatt@fr.com
                                           Riley J. Green
                                           Texas Bar No. 24131352
                                           rgreen@fr.com
                                           **FISH & RICHARDSON P.C.**
                                           1717 Main Street, Suite 5000
                                           Dallas, Texas 75201
                                           (214) 747-5070 (Telephone)
                                           (214) 747-2091 (Facsimile)

                                           **COUNSEL FOR DEFENDANT**
                                           **POPEYES LOUISIANA KITCHEN, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on April 9, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

                                           */s/ Lance E. Wyatt, Jr.*
                                           Lance E. Wyatt, Jr.