**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **WOLVERINE BARCODE IP, LLC,**<br>    **Plaintiff,**<br><br>**v.**<br><br>**POPEYES LOUISIANA KITCHEN, INC.,**<br>    **Defendant** | **Civil Action No. 2:26-cv-00023**<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF WOLVERINE BARCODE IP, LLC'S OPPOSITION TO
DEFENDANT POPEYES LOUISIANA KITCHEN, INC.'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. LEGAL STANDARD .........................................................................................................2

    A. Failure to State a Claim..............................................................................................2

III. ARGUMENT ....................................................................................................................4

A. Wolverine Plausibly Alleges Direct Infringement....................................................4

    1. The Complaint and Exhibit B map each limitation of claim 1 to Popeyes Rewards.......4

    2. Popeyes' "product barcode" argument raises factual and claim construction issues ......6

    3. Wolverine need not prove at the pleading stage that Popeyes alone "practices" each step ...............................................................................................................................8

B. The Complaint Also Plausibly Alleges Divided Infringement Under Akamai....................9

C. Wolverine's Indirect Infringement Allegations Are Sufficient...........................................11

    1. The Complaint plausibly alleges an underlying act of direct infringement...................11

    2. Induced infringement is pled with more than labels and conclusions ...........................11

    3. The Complaint adequately pleads contributory infringement .......................................12

D. In the Alternative, Wolverine Should Be Granted Leave to Amend ..................................13

IV. CONCLUSION....................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015) .................................................................. 8, 9, 10

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)................................................................................. 2 4

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007)................................................................................. 4, 3

*Bell v. Miller*,
Case No. 1:18-cv-522, 2018 U.S. Dist. LEXIS 151438 (W.D. Mich. 2018) ...................... 13

*Choon's Design, LLC v. Zenacon, LLC*,
No. 2:13-CV-13568, 2015 WL 539441(E.D. Mich. Feb. 9, 2015) ........................................ 3

*Decker v. Infante*,
*Case* No., 19-11654, 2023 U.S. Dist. LEXIS 136881 (E.D. Mich. Aug. 7, 2023)............... 13

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed. Cir. 2018) ...................................................................... 3

*Doe v. Baum*,
903 F.3d 575 (6th Cir. 2018) .......................................................................... 3

*Hunton Energy Holdings, LLC v. HL Seawater Holdings, LLC*,
539 F. Supp. 3d 685 (S.D. Tex. 2021)..................................................................... 3

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017) .................................................................. 3, 6

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2017) ................................................................. 9, 10

*Michigan Motor Techs. LLC v. Hyundai Motor Co.*,
Civil Action No. 17-CV-12901, 2018 U.S. Dist. LEXIS 226517(E.D. Mich. Aug. 9, 2018) ............................................................................................... 3

*Nalco Co. v. Chem Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) ............................................... 4, 6, 7, 11, 12

*Swift v. Cnty. of Wayne*,
No., 10-12911, 2011 WL 1102785 (E.D. Mich. Mar. 23, 2011)............................................ 3

**Constitutional Provisions & Statutes**

35 U.S.C. § 271........................................................................................... 3, 9

**Rules & Regulations**

Fed. R. Civ. P. 8........................................................................................... 2, 6
Fed. R. Civ. P. 12 .............................................................................. 1, 3, 4, 7, 13

Plaintiff Wolverine Barcode IP, LLC ("Wolverine") files this Opposition to Defendant Popeyes Louisiana Kitchen, Inc.'s ("Popeyes") Motion to Dismiss for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ("Motion").[1] For the reasons set forth below, Defendant's Motion should be denied.

## I. INTRODUCTION

Popeyes asks the Court to dismiss a detailed patent infringement complaint and a 25 page claim chart at the pleading stage by inviting the Court to accept Popeyes' factual narrative about how its systems work and to construe claim terms in Popeyes' favor. That is improper under Rule 8, Rule 12(b)(6), and controlling Federal Circuit precedent.

Wolverine's Original Complaint[2] ("the Complaint") identifies the patent in suit, U.S. Patent No. 9,280,689 ("the '689 Patent"),[3] and Wolverine's ownership by assignment.[4] The Complaint alleges that Popeyes "maintains, operates, and administers systems, products, and services that conducting offline transactions that use a barcode as a method of personal identification that infringes one or more of claims 1–3 of the '689 patent, literally or under the doctrine of equivalents."[5] The Complaint further alleges that Popeyes "put the inventions claimed by the '689 Patent into service (i.e., used them); but for Defendant's actions, the claimed invention embodiments involving Defendant's products and services would never have been put into service," and that "Defendant's acts complained of herein caused those claimed invention embodiments as a whole to perform."[6] Finally, the Complaint pleads direct, induced, and contributory infringement and incorporates by reference Exhibit B, a limitation by limitation chart

---

[1] ECF 12
[2] ECF 1
[3] ECF 1-1
[4] ECF 1, para 6-7.
[5] ECF 1, para 8.
[6] *Id.*

mapping claim 1 of the '689 Patent to Popeyes Rewards, its QR code based user identification, its account servers, and its in store scanning and transaction processes.[7]

These allegations, taken as true and read together with Exhibit B, more than satisfy the pleading standard. They plausibly state claims of direct and indirect infringement and put Popeyes on notice of what conduct is accused.

Popeyes' motion rests on three arguments:

1.      That Wolverine's theory of "product barcodes" is "contradictory" and implausible because one image link in Exhibit B references a Popeyes branded item on Walmart's website;[8]

2.      That claim 1 of the '689 Patent necessarily involves "divided" infringement and Wolverine failed to adequately plead direction and control or joint enterprise;[9] and

3.      That Wolverine's inducement and contributory infringement allegations are conclusory.[10]

Each argument either (a) seeks to resolve factual disputes and claim construction issues in Popeyes' favor at the pleading stage, or (b) demands more detail than Rule 8 requires.[11] The motion should be denied. In the alternative, if the Court identifies any deficiency in Wolverine's pleading, Wolverine respectfully requests leave to amend.

## II. LEGAL STANDARD

### A. Failure to State a Claim.

The question before the Court is whether Wolverine's Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." [12] Ashcroft

---

[7] ECF 1, para 9-11; ECF 1-2.
[8] ECF 12, pg 1.
[9] ECF 12, pg 1.
[10] ECF 12, pg 9-10.
[11] F.R.C.P. 8.
[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

v. Iqbal, 556 U.S. 662, 677-78 (2009).  In a patent infringement case, "[t]here is no requirement for [the plaintiff] to 'prove its case at the pleading stage.'" [13]  The Federal Circuit "requires that a complaint place the infringer on notice of what activity . . . is being accused of infringement." [14] Indeed, when evaluating the sufficiency of the complaint under a Rule 12(b)(6) motion to dismiss, the Court must "accept all of the plaintiff's factual allegations as true," "draw all reasonable inferences in the plaintiff's favor," and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief."[15] "If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds."[16]  Hence, at the pleading stage, a plaintiff need not plead and prove its entire case. Rather, for the case to proceed, a plaintiff simply needs to present "factual allegations" that "raise a right to relief above the speculative level."[17] It is defendant's burden to prove the "complaint does not permit the plausible inferences that the defendant is liable for the conduct alleged."[18]

To state a claim for patent infringement under 35 U.S.C. §271, a plaintiff need only give the defendant "fair notice" of the infringement claim and "the grounds upon which it rests."[19] "Fair notice," in turn, requires the plaintiff to plausibly allege that the accused product meets "each and every element of at least one claim" of the asserted patent.[20] "A defendant has fair notice of a direct infringement claim if the complaint specifically identifies the allegedly infringing product and the patent the product infringes".[21] Simply put, Defendants have attempted to turn a motion to

---

[13] *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017).
[14] *id.*
[15] *Doe v. Baum,* 903 F.3d 575, 581 (6th Cir. 2018).
[16] *id*
[17] *Swift v. Cnty. of Wayne,* No. 10-12911, 2011 WL 1102785, at *2 (E.D. Mich. Mar. 23, 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007))).
[18] *Choon's Design, LLC v. Zenacon, LLC,* No. 2:13-CV-13568, 2015 WL 539441, at *8 (E.D. Mich. Feb. 9, 2015).
[19] *Disc Disease Sols. Inc. v. VGH Sols., Inc.,* 888 F.3d 1256, 1260 (Fed. Cir. 2018).
[20] *Disc Disease*, 888 F.3d at 1260. See, also, *Michigan Motor Techs. LLC v. Hyundai Motor Co.,* Civil Action No. 17-CV-12901, 2018 U.S. Dist. LEXIS 226517, at *3 (E.D. Mich. Aug. 9, 2018).
[21] *Hunton Energy Holdings, LLC v. HL Seawater Holdings, LLC,* 539 F. Supp. 3d 685, 694 (S.D. Tex. 2021) (quoting *Disc Disease*).

dismiss into a challenge of the merits of Plaintiffs patent claims. Where, as here, a complaint includes a detailed claim chart mapping each limitation of at least one asserted claim to concrete features of an accused product or service, courts regularly hold the pleading sufficient.[22]

Because Plaintiff's Complaint satisfies the plausibility standard of *Ashcroft* and *Bell Atlantic*[23] and provides Defendants with fair notice of infringement, Popeyes' Motion should be denied.

## III. ARGUMENT

### A. Wolverine Plausibly Alleges Direct Infringement

#### 1. The Complaint and Exhibit B map each limitation of claim 1 to Popeyes Rewards

Wolverine alleges that Popeyes "maintains, operates, and administers systems, products, and services" that carry out "offline transactions that use a barcode as a method of personal identification" and that these systems "infringe[] one or more of claims 1–3 of the '689 patent, literally or under the doctrine of equivalents."[24] Wolverine further alleges that Popeyes "put the inventions claimed by the '689 Patent into service (i.e., used them)" and "caused those claimed invention embodiments as a whole to perform."[25]

Exhibit B then provides an element-by-element mapping of claim 1 to Popeyes Rewards:

Step 1(a) – "providing a personal code to a person for their use to purchase goods." The chart identifies a unique customer digital ID such as "7a14cd7c 990e 4629 9027 f573d50c7524" and explains that Popeyes Rewards "gives a customer a unique digital ID number so they can use it when making a qualifying purchase," referred to as an "Eligible Transaction."[26]

---

[22] *Nalco Co. v. Chem Mod, LLC,* 883 F.3d 1337, 1350–55 (Fed. Cir. 2018) (reversing dismissal where district court effectively adopted defendant's non infringement theory and resolved factual disputes at Rule 12 stage).
[23] *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) and *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955 (2007).
[24] ECF 1, ¶ 8
[25] Id.
[26] ECF 1-2, pg 5.

Step 1(b) – "converting said personal code into barcode format to form a User ID Barcode." The chart shows the personal code being converted into a scannable QR/barcode on the customer's device, labeled as a customer ID, and notes that it includes special characters (e.g., hyphens) distinguishing it from a product barcode.[27]

Step 1(c) – "storing said personal code in said User ID Barcode format" and "in a User Vendor Management Server." The chart cites Popeyes' terms describing "computer on line systems, servers" and explains that Popeyes Rewards saves the customer's unique ID number both as a barcode on the customer's device and in its online systems so it can be used to make and track eligible purchases.[28]

Step 1(d) – "establishing a User Account in a User Vendor Management Server corresponding to said personal code." The chart identifies a "Popeyes Rewards account" created in Popeyes' online systems and linked to the unique personal code, supported by Popeyes' terms describing accounts and "computer on line systems, servers."[29]

Step 1(e) – "depositing funds in said User Account to establish a credit limit." The chart maps this to Popeyes Rewards members earning "10 points for every $1 spent" and using those points as a "credit limit" to redeem for free or discounted items.[30]

Step 1(f) – "conducting purchases at vendors each having a vendor server wherein each purchase includes scanning product barcodes including product price and said User ID Barcode with a product barcode scanner at the vendor cash register and transmitting both product barcodes and User ID Barcode to said vendor server." The chart states that when a customer makes a purchase at a Popeyes location, the in store system scans both product barcodes (including the

---

[27] ECF 1-2, pg 6-8.
[28] ECF 1-2, pg 8-10.
[29] ECF 1-2, pg 10-11.
[30] ECF 1-2, pg 11-12.

price of any modifiers) and the customer's User ID Barcode/QR code, and that both the product information and the User ID are sent to the online computer systems or servers. The chart identifies the vendor server as Popeyes' "computer on line systems, servers."[31]

Steps 1(g)–(i) – detecting the User ID Barcode at the vendor server, forwarding information to the "User Vendor Management Server," comparing purchase price with available funds/points, sending an "approval signal," forwarding that signal to the vendor cash register, and repeating these steps for subsequent transactions. The chart explains that Popeyes Rewards detects the customer's User ID Barcode in the servers, forwards the price (including modifiers), compares that price to the redeemable points in the customer's account, and, if sufficient points exist, sends an "in restaurant receipt" or approval back to the in store system.[32]

Wolverine's Complaint incorporates this chart.[33] These detailed allegations identify the accused system (Popeyes Rewards), describe its operation, and tie that operation to each element of claim 1. That is more than sufficient under Rule 8 and cases like *Lifetime* and *Nalco*.[34]

### 2. Popeyes' "product barcode" argument raises factual and claim construction issues

Popeyes' principal attack on direct infringement is that Wolverine's theory regarding the "product barcode" limitation is "implausible" and "contradictory" because one image link in the chart references a Popeyes branded dipping sauce image hosted by Walmart. Popeyes asserts that such retail bottles cannot be purchased in Popeyes restaurants and cannot be bought with rewards points, and concludes that Wolverine has not plausibly alleged that product barcodes are scanned in Popeyes stores.[35]

---

[31] ECF 1-2, pg 12-16.
[32] ECF 1-2, pg 16-25.
[33] ECF 1, ¶ 9.
[34] F.R.C.P. 8; *Lifetime Indus., Inc. v. Trim-Lok, Inc.,* 869 F.3d 1372 (Fed. Cir. 2017); *Nalco Co. v. Chem Mod, LLC,* 883 F.3d 1337, 1350–55 (Fed. Cir. 2018)
[35] ECF 12, pgs 1, 9–10.

Popeyes' argument fails at the pleading stage.

First, Exhibit B expressly alleges that product barcodes are scanned at Popeyes locations, independent of the Walmart image. Row 1.6 states: "For example, when a customer makes a purchase at a Popeyes location, the in-store system scans both the product barcodes (including the price of any modifiers) and the customer's User ID Barcode or QR code. Both the product information and the User ID are then sent to the online computer system or servers."[36] Taking this allegation as true, it is plausible that Popeyes' POS systems read machine readable product codes (barcodes or their equivalent) at the register and transmit them along with the User ID Barcode.

Second, the Walmart hosted image is simply one example of a barcoded Popeyes branded product; it is not the sole basis for the "product barcode" limitation. The chart globally defines "product barcode" as "SEE IMAGE of barcode," and "scanner" as "QR code scanned in store."[37] Whether that specific retail item is sold in restaurants or redeemable with points does not negate Wolverine's core allegation that Popeyes uses product barcodes or equivalent codes at the register.

Third, Popeyes is asking the Court to adopt its view of how its POS and rewards systems operate and to construe "product barcode" in a way that excludes Wolverine's theory. That is exactly what the Federal Circuit has cautioned against at the pleading stage. In Nalco, the district court dismissed on the theory that the accused process did not meet a claim limitation; the Federal Circuit reversed, holding that the district court erroneously imported an extraneous limitation and effectively decided a claim construction dispute on a motion to dismiss.[38] The same error would occur here if the Court accepted Popeyes' characterization of its own systems and rejected Wolverine's contrary, plausible factual allegations.

---

[36] ECF 1-2, pg 12.
[37] ECF 1-2, pg 25.
[38] Nalco Co. v. Chem Mod, LLC, 883 F.3d 1337, 1350–55 (Fed. Cir. 2018) (reversing dismissal where district court effectively adopted defendant's non infringement theory and resolved factual disputes at Rule 12 stage). Nalco 1347-1348ECF 1-2, pg. 25.

At this stage, Wolverine is not required to prove that a particular dipping sauce bottle is scanned at a Popeyes register. It need only plausibly allege that in Popeyes' in store transactions, product barcodes, or equivalent machine readable product identifiers, and the User ID Barcode are scanned by a scanner at the vendor cash register and transmitted to Popeyes' servers. Exhibit B alleges exactly that.

**3. Wolverine need not prove at the pleading stage that Popeyes alone "practices" each step**

Popeyes argues that Wolverine improperly confuses "the claimed method claims with system claims" by alleging Popeyes "put the inventions claimed by the '689 Patent into service"[39] and that "[a] method claim is infringed only by one practicing the patented method."[40] But at the Rule 8 stage, Wolverine is not required to prove which specific actors (servers, employees, or customers) execute each step, only to allege facts that plausibly support that the steps are all performed when Popeyes uses its accused system.

Wolverine alleges that Popeyes "maintains, operates, and administers" the accused systems[41] and that Popeyes' systems, in operation, carry out the steps of claim 1 using the User ID Barcode, product codes, and account servers.[42] That is enough to plausibly infer that Popeyes uses a system that practices every step of the claimed method in the sense recognized by the Federal Circuit in *Akamai*.[43]

Who, in fact, performs each step, and whose acts are attributable to whom, are merits questions for discovery and, if necessary, summary judgment, not grounds for dismissal.

---

[39] ECF 12, pg 4.
[40] ECF 12, pg 6 (quoting *Schumer*).
[41] ECF 1, ¶ 8.
[42] ECF 1-2.
[43] *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022–23 (Fed. Cir. 2015).

**B. The Complaint Also Plausibly Alleges Divided Infringement Under Akamai**

Even if the Court concludes that claim 1 involves multiple actors, Wolverine has still pled a viable direct infringement theory under the divided infringement framework. Under *Akamai* and *Lyda*, "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity."[44]

A single entity is responsible for others' performance when it directs or controls that performance, including where it (1) "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method," and (2) "establishes the manner or timing of that performance."[45]

Here, the Complaint and Exhibit B plausibly allege all steps of the claimed method are performed. Exhibit B maps each step (a)–(i) of claim 1 to conduct in the Popeyes Rewards ecosystem. Customer facing steps like "conducting purchases at vendors"[46] and server side steps like detecting the User ID Barcode, comparing purchase price to the account's points/funds, sending an approval signal, and repeating these steps[47] are all tied to specific actions by Popeyes' POS and server systems and by its customers.

Popeyes directs and controls customers' performance of the customer facing steps. The chart cites Popeyes' own terms and instructions:

Members "earn 10 points for every $1 spent" at participating restaurants, by ordering on the Popeyes App or website, or by paying with a linked card.[48]

---

[44] *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).
[45] *Id*.at 1023; See also *Lyda v. CBS Corp.,* 838 F.3d 1331, 1339–40 (Fed. Cir. 2017).
[46] ECF 1-2, pg 12-16.
[47] ECF 1-2, pg 16-25.
[48] ECF 1-2, pg 11-12.

To redeem in store, "the reward must first be added to a Member's Popeyes account, and then the Member must have the QR code scanned in store."[49]

App screens instruct members to "Present [the QR code] at register or payment window" and to "Use a Reward! Select a Reward to be redeemed with your next restaurant purchase."[50] These allegations show that Popeyes conditions participation in the rewards program and the receipt of points and redemptions upon performance of certain steps, e.g., signing up, presenting the User ID Barcode at the register, and having it scanned in connection with purchases, and that Popeyes specifies the manner and timing of that performance. Popeyes controls the servers and POS systems that execute the remaining claim steps.

Under *Akamai*, these facts permit a reasonable inference that customers' actions in scanning the User ID Barcode during transactions are attributable to Popeyes, which uses and operates the combined system. Wolverine is not required at this stage to recite the words "direction and control" or "joint enterprise"; it must only plead facts supporting that conclusion. It has done so.

Popeyes' reliance on *Lyda* and *Mullen* is misplaced. In those cases, the complaints lacked concrete factual allegations linking the defendants' control or conditioning of benefits to the performance of specific claim steps. Here, by contrast, Wolverine has pled how Popeyes Rewards functions, how customers are required to use it to earn and redeem benefits, and how that use performs the method steps of claim 1.

---

[49] ECF 1-2, pg 12-16 (quoting Popeyes' rewards terms.)
[50] ECF 1-2, pg 8-10, 16-19, images.

### C. Wolverine's Indirect Infringement Allegations Are Sufficient

Popeyes also seeks dismissal of Wolverine's indirect infringement claims, arguing that there is no plausible underlying direct infringement and that the allegations of inducement and contributory infringement are conclusory. Neither contention is correct

#### 1. The Complaint plausibly alleges an underlying act of direct infringement

As discussed above, the Complaint and Exhibit B plausibly allege that all steps of claim 1 are performed by, or attributable to, Popeyes through its operation of the Popeyes Rewards ecosystem, its POS systems, and associated servers. That is sufficient to support underlying direct infringement for purposes of inducement and contributory infringement.[51]

#### 2. Induced infringement is pled with more than labels and conclusions

Paragraph 10 of the Complaint states:

"Defendant has and continues to induce infringement. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services such as to cause infringement of one or more of claims of the '689 patent, literally or under the doctrine of equivalents. Moreover, Defendant has known of the '689 patent and the technology underlying it from at least the filing date of the lawsuit. For clarity, direct infringement is previously alleged in this complaint."[52]

These allegations are grounded in the specific conduct described in ¶ 8 and Exhibit B. Popeyes provides the rewards app and QR code system, posts terms on its website, and issues in app and in store instructions telling customers to add rewards to their account; and present and

---

[51] See *Nalco,* 883 F.3d at 1355.

[52] ECF1,, ¶ 10.

have their QR code scanned at the register or payment window in connection with purchases, to earn and redeem points.[53]

Wolverine has thus alleged knowledge of the '689 Patent (at least as of the filing date), that Popeyes' customers directly infringe when they use the accused systems as instructed, and that Popeyes specifically intends for its customers to use the systems in that manner by actively encouraging and instructing them to do so.

That is sufficient to state a plausible inducement claim at the pleading stage.[54]

### 3. The Complaint adequately pleads contributory infringement

Paragraph 11 alleges,

"Defendant has and continues to contributorily infringe. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., conducting offline transactions that use a barcode as a method of personal identification) and related services such as to cause infringement of one or more of claims 1–3 of the '689 patent, literally or under the doctrine of equivalents. Further, there are no substantial noninfringing uses for Defendant's products and services. Moreover, Defendant has known of the '689 patent and the technology underlying it from at least the filing date of the lawsuit." [55]

Those allegations are again tied to the specific accused components and functionality in Exhibit B: the Popeyes Rewards app, the User ID Barcode/QR code, the "User Account" and

---

[53] ECF1-2.
[54] See *Nalco,* 883 F.3d at 1355–57 (allegations that defendants encouraged customers to use an accused system in an infringing way, coupled with knowledge of the patent, were sufficient to plead inducement).
[55] ECF 1, ¶ 11.

"User Vendor Management Server" (Popeyes' "computer on line systems, servers"), and the POS scanners at Popeyes restaurants.

Taking these allegations as true, Wolverine has pled that Popeyes supplies and configures components (software, servers, app, QR codes) that are a material part of the patented method, these components are especially adapted to perform that method (conducting offline transactions that use a barcode as a method of personal identification linked to an account), when used as intended and instructed by Popeyes, the components have no substantial non infringing uses,  and there is underlying direct infringement by customers and/or Popeyes itself.

That is sufficient to state a plausible claim of contributory infringement at this stage. Whether Popeyes can later identify alleged non infringing uses and whether any such uses are "substantial" are fact issues not properly resolved on a Rule 12(b)(6) motion.

### D.  In the Alternative, Wolverine Should Be Granted Leave to Amend

Plaintiff respectfully requests leave to amend if the Court is inclined to grant Defendant's Motion to Dismiss in any respect.  Plaintiff believes that it has addressed each of Defendant's points but requests leave to amend if the Court disagrees, particularly as this Motion is the first time the Court has had the opportunity to address the sufficiency of Plaintiff's pleadings. To the extent necessary Wolverine requests leave to amend.

Given the liberal standard for amending pleadings, leave to amend is warranted, to permit plaintiff to assert factual allegations and theories, so that Plaintiff's case can be adjudicated on its merits. [56]

---

[56] *See Decker v. Infante, Case* No. 19-11654, 2023 U.S. Dist. LEXIS 136881 (E.D. Mich. Aug. 7, 2023); *Bell v. Miller*, Case No. 1:18-cv-522, 2018 U.S. Dist. LEXIS 151438, at *2 (W.D. Mich. 2018).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion is denied.

Respectfully Submitted

**Ramey LLP**
_/s/ William P. Ramey, III_
William P. Ramey, III
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com
**_Attorneys for Wolverine Barcode IP, LLC_**

14

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served on this day of April 23, 2026, with a copy of the foregoing via CM/ECF Filing.

*/s/ William P. Ramey, III*
William P. Ramey, III