## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| **WOLVERINE BARCODE IP, LLC,** | |
| **Plaintiff,** | **Civil Action No. 2:26-cv-00023** |
| **v.** | **JURY TRIAL DEMANDED** |
| **POPEYES LOUISIANA KITCHEN, INC.,** | |
| **Defendant** | |

### DEFENDANT POPEYES LOUISIANA KITCHEN, INC.'S
### <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ....................................... 2

III.  STATEMENT OF THE ISSUE ......................................................................... 2

IV.   STATEMENT OF THE FACTS ....................................................................... 2

V.    LEGAL STANDARD ......................................................................................... 5

VI.   ARGUMENT ....................................................................................................... 6

VII.  CONCLUSION .................................................................................................... 7

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)..............................................................................6

*ALD Soc. LLC v. Verizon Commc'ns, Inc.*,
No. WA-22-CV-1011-FB, 2023 WL 11915724 (W.D. Tex. Sept. 30, 2023) .........................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................5

*Cuvillier v. Sullivan*,
503 F.3d 397 (5th Cir. 2007) ..................................................................................5

*Desenberg v. Google, Inc.*,
392 F. App'x 868 (Fed. Cir. 2010) .........................................................................6

*Laitram Corp. v. Rexnord, Inc.*,
939 F.2d 1533 (Fed. Cir. 1991)...............................................................................6

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)............................................................................5, 6

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
No. CV 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016)............................5

*Ruby Sands LLC v. Am. Nat'l Bank of Texas*,
No. 2:15-CV-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) .............................1, 8

*Schumer v. Lab'y Computer Sys., Inc.*,
308 F.3d 1304 (Fed. Cir. 2002).................................................................................6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................5, 6

## I.    INTRODUCTION

The Court should dismiss Wolverine Barcode's Amended Complaint. Popeyes already filed one motion to dismiss this case because Wolverine Barcode's claims require "conducting purchases at vendors . . . wherein each purchase includes scanning product barcodes including product price," and Wolverine Barcode did not plausibly allege that Popeyes' restaurants scan product barcodes. Dkt. 12 at 6–7. In its Motion, Popeyes explained that in its Complaint, Wolverine Barcode pointed to a Popeyes dipping sauce bottle sold at Walmart—not in Popeyes' stores. *Id.* Had Wolverine Barcode conducted any pre-suit investigation, such as by visiting the Popeyes location five minutes away from its counsel's office, it would know that Popeyes does not scan product barcodes in-store.

In response to Popeyes' Motion, Wolverine Barcode amended its Complaint. *See* Dkt. 19. Wolverine Barcode left its claim charts unchanged but added several paragraphs to the body of the Complaint itself, purporting to bolster its direct and indirect infringement allegations. *Id.* ¶¶ 8–29. The added paragraphs do not cure the deficiency Popeyes identified in its Motion. Wolverine Barcode alleges only in conclusory fashion that "the accused 'product barcode' is the Popeyes in-restaurant product, menu-item, modifier, reward, coupon, offer, SKU, PLU, or equivalent product-price barcode or code used by the Popeyes POS/cash-register system[.]" *Id.* ¶ 20. Wolverine Barcode identifies no particular product or "menu-item." "[T]he Court is left to wonder whether [Wolverine Barcode] performed a thorough pre-suit investigation, as required by the Federal Rules, to craft a plausible infringement theory before filing its complaint." *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *4 (E.D. Tex. June 28, 2016). Wolverine Barcode fails to plausibly allege direct infringement. The Court should dismiss Wolverine Barcode's Amended Complaint and should do so with prejudice to prevent further waste of the Parties' and the Court's time.

1

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On January 9, 2026, Wolverine Barcode filed its Complaint, alleging that Popeyes infringes claims 1–3 of the '689 Patent. Dkt. 1 ¶¶ 6–12. Popeyes filed a Motion to Dismiss on April 9, 2026, arguing that Wolverine Barcode failed to plausibly allege direct and indirect infringement. Dkt. 12. Wolverine Barcode responded to Popeyes' Motion on April 23, Dkt. 16, but then filed an Amended Complaint on April 30, Dkt. 19.

## III.    STATEMENT OF THE ISSUE

1.    Wolverine Barcode has not plausibly alleged direct infringement, because its Complaint does not plausibly allege that Popeyes meets several claim limitations. Should the Court dismiss Wolverine Barcode's Complaint?

## IV.    STATEMENT OF THE FACTS

The '689 Patent describes "the present invention" as relating to "offline commerce transactions using the user ID Barcode as the user identifier for purchasing goods priced at micro payment or non-micro payment level [*sic*] using the fund or credit limit available at the user's account in the server identified as a User Vendor Management Server (UVM)." '689 Patent at 1:17–21. According to the patent's background section, it is impractical for vendors to accept credit card payments for "micro payments" (e.g., five or ten cents) because the processing cost is too high. *Id.* at 1:26–31. To overcome this problem, the '689 Patent describes a method in which users may use a barcode (on a smartphone or credit card) associated with a user account that has been preloaded with funds to facilitate payments at participating vendors without involving a third party to process those transactions. *Id.* at 2:34–3:50.

The '689 Patent has three claims, one independent claim and two dependent claims, all of which are method claims. '689 Patent, cls. 1–3. Independent claim 1, the only claim Wolverine Barcode charted, claims the following method:

2

1. A method for conducting offline electronic commerce transactions having a vendor barcode scanner and a vendor cash register comprising:

(a) providing a personal code to a person for their use to purchase goods;

(b) converting said personal code into barcode format to form a User ID Barcode, said User ID Barcode corresponding to said personal code and including at least one special character to distinguish the barcode as a User ID Barcode from a product barcode;

(c) storing said personal code in said User ID Barcode format by said person for use to purchase goods and storing said personal code in a User Vendor Management Server to permit purchases to be made at a vendor;

(d) establishing a User Account in a User Vendor Management Server corresponding to said personal code;

(e) depositing funds in said User Account to establish a credit limit;

(f) conducting purchases at vendors each having a vendor server wherein each purchase includes scanning product barcodes including product price and said User ID Barcode with a product barcode scanner at the vendor cash register and transmitting both product barcodes and User ID Barcode to said vendor server;

(g) detecting the User ID Barcode at the vendor server and forwarding the ID Barcode and purchase price to said User Vendor Management Server;

(h) comparing the purchase price with the funds in said User Vendor Management Server to determine if there are available funds within the credit limit in the User Vendor Management Server account, and if there are, sending an approval signal to the vendor server;

(i) forwarding the approval signal to the vendor cash register; and

(i) [*sic*] repeating steps (f) through (i) for subsequent purchase transactions using said User ID Barcode.

'689 Patent, claim 1.

As the claim language itself recites, certain steps—like "(f) conducting purchases at vendors"—are performed by customers, and other steps—like "(a) providing a personal code to a person for their use to purchase goods"—are not performed by customers. Wolverine Barcode's allegations are vague and inconsistent as to whether Popeyes or a Popeyes customer directly

3

infringes the asserted '689 Patent claims or how they are infringed.

The claim chart attached as Exhibit B to the Complaint fails to resolve the issue. For some steps Wolverine Barcode points to acts allegedly performed by Popeyes Rewards:

| Step 1(a) | For example, Popeyes Rewards gives a customer a unique digital ID number so they can use it when making a qualifying purchase. |
|---|---|
| Step 1(c) | For example, Popeyes Rewards saves the customer's unique ID number both as a barcode on the customer's device and in its online computer systems. This allows the ID to be used later to make and track eligible purchases at a Popeyes restaurant. |
| Step 1(d) | For example, Popeyes Rewards creates a customer rewards account in its online computer system and links that account to the customer's unique ID number. |
| Step 1(g) | For example, Popeyes Rewards detects the customer's User ID Barcode in the online computer system or servers and then sends both the User ID and the price of any |
| Step 1(h) | For example, Popeyes Rewards compares the price of the modifier with the available redeemable points in the online system or server account. If there are enough points, the system sends an in-restaurant receipt to the servers. |

Dkt. 19-2 at 5, 8–9, 10–11, 16–17, 19–20 (highlighting added). For other steps, the claim chart identifies acts performed by a customer:

| Step 1(f) | For example, when a customer makes a purchase at a Popeyes location, the in-store system scans both the product barcodes (including the price of any modifiers) and the customer's User ID Barcode or QR code. Both the product information and the User ID are then sent to the online computer system or servers. |
|---|---|

Dkt. 19-2 at 5, 12–13 (highlighting added). For yet other steps, the claim chart is unclear who performs the action:

| Step 1(e) | For example, the customer earns 10 reward points for every dollar spent in their Popeyes Rewards account, and these points can later be redeemed for free or discounted items. |
|---|---|

Dkt. 19-2 at 11 (highlighting added).

Wolverine Barcode fails to provide sufficient explanation of its infringement theory (regardless of the actor(s) involved) for several claim elements and only parrots the claim language or ignores it altogether.

## V.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted).

For a Complaint to survive a motion to dismiss, it must set out "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Federal Circuit "precedent requires that a complaint place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013)). A claim for direct infringement requires plausible allegations that the accused products practice each of the limitations found in at least one asserted claim. *Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. CV 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (conducting limitation by limitation analysis). "The failure to meet a single

5

limitation is sufficient to negate infringement of [a] claim." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

"Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). Failure to sufficiently plead divided infringement is grounds for dismissal under Rule 12. *Desenberg v. Google, Inc.*, 392 F. App'x 868, 872 (Fed. Cir. 2010).

## VI.    ARGUMENT

Wolverine Barcode's direct infringement allegations are implausible. To survive a 12(b)(6) motion to dismiss, a party claiming direct infringement must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lifetime*, 869 F.3d at 1376 (quoting *Iqbal*, 556 U.S. at 678). This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. However, "[a] method claim is infringed only by one practicing the patented method." *Schumer v. Lab'y Computer Sys., Inc.*, 308 F.3d 1304, 1309 n.3 (Fed. Cir. 2002).

Wolverine Barcode has not plausibly alleged that Popeyes is practicing the patented method. Claim 1 describes two different types of barcodes that are used simultaneously: "a User ID Barcode," which identifies a user, and a "product barcode" which is located on a product. Dkt. 19-2 at 6. Claim limitation 1(f) similarly requires "conducting purchases at vendors . . . wherein each purchase includes scanning product barcodes including product price and said User ID Barcode with a product barcode scanner at the vendor cash register and transmitting both product barcodes and User ID Barcode to said vendor server." *See, e.g.*, Dkt. 19-2 at 12.

While Wolverine Barcode appears to point to Popeyes' Rewards App for the "User ID Barcode," it points to a Popeyes dipping sauce bottle sold at Walmart for the "product barcode," as the URL even says "Walmart." *See* Dkt. 19-2 at 8. Wolverine Barcode does not allege that

6

Popeyes retail dipping sauce bottles can be bought at Popeyes restaurants; they cannot. Wolverine Barcode also does not allege that Popeyes customers can buy retail dipping sauce bottles with Rewards points; they cannot. The sauce bottles are only sold at retail stores such as Walmart, where users cannot use their Popeyes Rewards points.[1]

In its Amended Complaint, Wolverine Barcode attempted to remedy this deficiency by stating that "the accused 'product barcode' is the Popeyes in-restaurant product, menu-item, modifier, reward, coupon, offer, SKU, PLU, or equivalent product-price barcode or code used by the Popeyes POS/cash-register system[.]" Dkt. 19 ¶ 20. Wolverine Barcode identifies no particular product or menu-item that allegedly has its barcode scanned. Instead, Wolverine Barcode asserts only what it **does not** rely on: "Plaintiff does not rely on a product barcode from an unrelated third-party retail transaction as the product barcode for the accused in-store Popeyes Rewards transaction." *Id.* But Wolverine Barcode cannot meet its burden under *Twombly* and *Iqbal* merely by reciting the claim elements and concluding that Popeyes infringes. *See ALD Soc. LLC v. Verizon Commc'ns, Inc.*, No. WA-22-CV-1011-FB, 2023 WL 11915724, at *3 (W.D. Tex. Sept. 30, 2023) (Dismissing claim brought by Ramey LLP because "The *Iqbal*/*Twombly* cannot be met, however, by 'reciting the claim elements and merely concluding that the accused product has those elements' or by 'pleading facts that are inconsistent with the requirements of its claims.'") (internal citation omitted).

## VII.   CONCLUSION

Wolverine Barcode has already had one chance to amend. It could have performed a sufficient pre-suit investigation, learned that Popeyes does not practice the method, and withdrawn

---

[1] Users also cannot "conduct purchases" of items using their Popeyes Rewards points. Instead, the Rewards points are used to redeem coupons, and the Rewards QR Code is scanned not to conduct a purchase, but to earn points after purchases are made.

7

its lawsuit. Instead, it chose to reassert the same claims while failing to cure the deficiencies in its original Complaint. Wolverine Barcode has not crafted a plausible theory of direct infringement by Popeyes. *Ruby Sands*, 2016 WL 3542430, at *4 ("[T]he Court is left to wonder whether [Wolverine Barcode] performed a thorough pre-suit investigation, as required by the Federal Rules, to craft a plausible infringement theory before filing its complaint."). The Amended Complaint should be dismissed with prejudice.

Dated: May 14, 2026                                   Respectfully submitted,

                                        By:  */s/ Lance E. Wyatt, Jr.*
                                             Neil J. McNabnay
                                             Texas Bar No. 24002583
                                             mcnabnay@fr.com
                                             Lance E. Wyatt
                                             Texas Bar No. 24093397
                                             wyatt@fr.com
                                             Riley J. Green
                                             Texas Bar No. 24131352
                                             rgreen@fr.com
                                             **FISH & RICHARDSON P.C.**
                                             1717 Main Street, Suite 5000
                                             Dallas, Texas 75201
                                             Telephone (214) 747-5070
                                             Facsimile (214) 747-2091

                                        **COUNSEL FOR DEFENDANT**
                                        **POPEYES LOUISIANA KITCHEN, INC.**

### CERTIFICATE OF SERVICE

        The undersigned certifies that a true and correct copy of the above and foregoing document has been served on May 14, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

                                        */s/ Lance E. Wyatt, Jr.*
                                        Lance E. Wyatt, Jr.

8