IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

**WOLVERINE BARCODE IP, LLC,**

    Plaintiff,

v.

**POPEYES LOUISIANA KITCHEN, INC.,**
Defendant.

**Civil Action No. 2:26-cv-00023-RWS-RSP**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

i

**TABLE OF CONTENTS**

I.  INTRODUCTION.................................................................................................................1

II. NATURE AND STAGE OF THE PROCEEDING...................................................................2

III. STATEMENT OF THE ISSUES..........................................................................................2

IV. LEGAL STANDARD ..........................................................................................................3
    A. Rule 12(b)(6) plausibility...............................................................................................3
    B. Patent-specific pleading after Bot M8.............................................................................4
    C. Method-claim direct infringement and attribution under Akamai .......................................4

V. ARGUMENT ......................................................................................................................5

    A. The FAC plausibly alleges that Popeyes scans both product-price barcode data and the
       User ID Barcode in the same in-store Popeyes Rewards transaction ...............................5
       1. The FAC identifies, paragraph by paragraph, what the Popeyes POS scans during an
          in-store Rewards transaction ...................................................................................5
       2. Popeyes' demand for an identified "specific product or menu-item" misstates the
          pleading standard and reads an unstated claim construction into Rule 12 .....................6
       3. Popeyes' factual assertion that it "does not scan product barcodes in-store" is not
          properly before the Court on Rule 12.......................................................................7

    B. The Exhibit B claim chart is a non-binding preliminary infringement contention; it cannot
       defeat the FAC's well-pleaded allegations ...................................................................8

    C. The FAC plausibly alleges single-entity direct infringement and, in the alternative,
       attribution under Akamai ............................................................................................9
       1. Single-entity direct infringement .............................................................................9
       2. Akamai attribution as an alternative theory...............................................................10
       3. Popeyes' implicit reliance on Lyda-type cases is misplaced .......................................11

    D. The remaining limitations of claim 1 are pleaded with detail............................................12

    E. The FAC plausibly states induced and contributory infringement......................................13

    F. Popeyes' authorities — Ruby Sands and ALD — do not require dismissal ........................14

VI. ALTERNATIVELY, ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE WITH
    LEAVE TO AMEND ........................................................................................................15

VII. CONCLUSION .................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) (en banc) ................................................. 4, 5, 6, 11

*ALD Soc. LLC v. Verizon Commc'ns, Inc.*,
  No. WA-22-CV-1011-FB, 2023 WL 11915724 (W.D. Tex. Sept. 30, 2023) ................ 14, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................. 3, 4, 7, 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................... 3

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) .............................................................. 2, 4, 6, 7, 13

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018) ....................................................................... 4, 6

*Eli Lilly*,
  845 F.3d 1357 (2017) ................................................................................... 11

*Foman v. Davis*,
  371 U.S. 178 (1962)..................................................................................... 16

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010) ....................................................................... 14

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) ................................................................... 13, 14

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017) ........................................................................ 4, 8

*Lyda v. CBS Corp.*,
  838 F.3d 1331 (Fed. Cir. 2016) ........................................................................ 11

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018) .............................................................. 2, 4, 7, 8

*Ruby Sands LLC v. Am. Nat'l Bank of Texas*,
  No. 2:15-CV-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016)...................... 14, 15

*Smith v. EMC Corp.*,
  393 F.3d 590 (5th Cir. 2004) .......................................................................... 16

*Travel Sentry,*
    877 F.3d at 1379–81 ................................................................................................ 11

**Constitutional Provisions & Statutes**

35 U.S.C. § 271 .............................................................................................. 3, 4, 6, 13


**Rules & Regulations**

Fed. R. Civ. P. 8 ................................................................................................ 1, 9, 10, 11

Fed. R. Civ. P. 12 ......................................................................................... 2, 3, 4, 6, 7, 15

Fed. R. Civ. P.15(a)(2) .......................................................................................... 2, 3, 16

## I.   INTRODUCTION

Popeyes' renewed motion to dismiss asks this Court to take Popeyes' word for how Popeyes' own restaurants work and then to dismiss *with prejudice* a patent case before any discovery has occurred. The motion rests on three propositions, each of which fails as a matter of pleading law. *First*, Popeyes asserts as fact that its point-of-sale ("POS") systems do not scan product-price barcode data in an in-restaurant Popeyes Rewards transaction — an assertion that does not appear in the operative pleading, is not judicially noticeable, and is contradicted by the First Amended Complaint's ("FAC") (Dkt. 19) well-pleaded allegations. *Second*, Popeyes insists that the FAC must identify a particular menu item with a particular barcode that gets scanned in a particular transaction — a level of pre-discovery specificity that *Bot M8* and *Disc Disease* squarely reject. *Third*, Popeyes argues that the FAC is "vague and inconsistent" because it pleads both single-entity infringement and *Akamai* attribution — but pleading alternative theories is exactly what Federal Rule of Civil Procedure 8(d) permits, and is exactly how a careful patent owner pleads a method-claim case with partly customer-facing steps.

The FAC pleads a coherent, integrated theory of direct infringement of claim 1 of U.S. Patent No. 9,280,689 ("the '689 patent"). It identifies the patent, the asserted claim, the accused workflow (the in-store Popeyes Rewards earn-and-redeem transaction), and the accused Popeyes-controlled infrastructure: the Popeyes mobile application and website, Popeyes Rewards accounts, Popeyes-controlled Rewards servers and databases, Popeyes POS and cash-register systems, vendor/POS servers, in-restaurant barcode/QR scanners, and participating Popeyes restaurants. Dkt. 19 ¶¶ 8–10. It then pleads, paragraph by paragraph, how each step of claim 1 maps to that workflow. *Id.* ¶¶ 13–24. And it pleads, with detailed factual support, the *Akamai* conditions, benefits, manner, and timing that supply the attribution theory in the alternative. *Id.* ¶¶ 11–12.

1

Popeyes' real complaint is not lack of notice — its motion shows it understands the accused workflow and the asserted claim. Its real complaint is that it disagrees with Wolverine on the facts (whether Popeyes' POS scans product/menu/product-price data) and on claim scope (whether the "product barcode" limitation reaches the SKU, PLU, modifier code, offer code, coupon code, reward code, QR data, or equivalent product-price data Popeyes' POS reads in an in-store Rewards transaction). Those are fact and claim-construction disputes that the Federal Circuit has repeatedly held cannot be resolved against the pleader on Rule 12. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349–50 (Fed. Cir. 2018); *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352–53 (Fed. Cir. 2021).

Popeyes' Motion (Dkt. 22) should be denied. If the Court identifies any pleading deficiency, leave to amend under Rule 15(a)(2) should be granted.

## II. NATURE AND STAGE OF THE PROCEEDING

Wolverine sued Popeyes on January 9, 2026 for infringement of the '689 patent. Dkt. 1. Popeyes moved to dismiss the original Complaint on April 9, 2026, contending principally that the original Complaint did not plausibly allege scanning of "product barcodes" in-store at Popeyes restaurants. Dkt. 12. Wolverine timely filed the First Amended Complaint on April 30, 2026, before the response deadline. Dkt. 19; *see* Fed. R. Civ. P. 15(a)(1)(B). The FAC added substantial detail, including paragraphs identifying the accused Popeyes Rewards in-restaurant transaction workflow, the Popeyes-controlled components of that workflow, the *Akamai* attribution theory, and specific factual allegations directed to the product-barcode/product-price limitation of claim 1. Dkt. 19 ¶¶ 8–29. Popeyes now moves to dismiss the FAC. Dkt. 22.

## III. STATEMENT OF THE ISSUES

1. Whether the FAC plausibly alleges that Popeyes directly infringes claim 1 of the '689 patent, when the FAC identifies the accused Popeyes Rewards in-restaurant transaction

workflow, alleges that the Popeyes POS scans both Popeyes product-price barcode data and the customer's User ID Barcode in the same in-store transaction, and alleges that the resulting data is transmitted to Popeyes' vendor/POS and Rewards servers for approval and redemption.

2.  Whether the FAC plausibly alleges, in the alternative, divided infringement attributable to Popeyes under *Akamai*, when the FAC alleges that Popeyes conditions receipt of Rewards benefits on customers performing the claimed steps and establishes the manner and timing of that performance.

3.  Whether the FAC plausibly alleges induced and contributory infringement under 35 U.S.C. §§ 271(b) and (c), when it alleges Popeyes' post-suit knowledge, specific intent, and provision of components especially made or adapted for the accused in-store Rewards workflow.

4.  Whether, if the Court were to identify any pleading deficiency, dismissal should be without prejudice with leave to amend under Rule 15(a)(2).

## IV. LEGAL STANDARD

### A. Rule 12(b)(6) plausibility.

On a Rule 12(b)(6) motion, the Court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The complaint must allege enough facts to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, but plausibility is not probability, and the complaint need not exclude every alternative explanation, *Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

3

**B. Patent-specific pleading after Bot M8.**

The Federal Circuit has rejected a categorical rule requiring a patentee to plead infringement on an element-by-element basis. *Bot M8*, 4 F.4th at 1352 ("[A] plaintiff is not required to plead infringement on an element-by-element basis."). The level of factual detail required depends on the complexity of the technology, the asserted claims, and the facts reasonably available to the patentee before discovery. *Id.* at 1352–53. A complaint plausibly states a claim of direct patent infringement when it identifies the patent, identifies the accused instrumentalities, and alleges that those instrumentalities meet the asserted claim. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018); *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). A patent owner is not required to prove its case at the pleading stage, and disputes over claim construction or the precise internal operation of the accused instrumentalities are merits issues not suited for Rule 12. *Nalco*, 883 F.3d at 1350.

**C. Method-claim direct infringement and attribution under Akamai.**

A method claim is directly infringed under 35 U.S.C. § 271(a) where all claimed steps are performed by or attributable to a single entity. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). Attribution may be shown not only through traditional agency or contractual relationships, but also where the alleged infringer (i) "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method" and (ii) "establishes the manner or timing of that performance." *Id.* at 1023. The Federal Circuit has applied that framework to defendants who direct relevant actors through program rules, software flow, or system design.

## V. ARGUMENT

### A. The FAC plausibly alleges that Popeyes scans both product-price barcode data and the User ID Barcode in the same in-store Popeyes Rewards transaction.

Limitation 1(f) of the '689 patent recites "conducting purchases at vendors each having a vendor server wherein each purchase includes scanning product barcodes including product price and said User ID Barcode with a product barcode scanner at the vendor cash register and transmitting both product barcodes and User ID Barcode to said vendor server." '689 patent, cl. 1 (Dkt. 19-1). Popeyes treats limitation 1(f) as the linchpin of its motion. Dkt. 22 at 6–7. The FAC pleads facts that, accepted as true, make Popeyes' performance of that limitation plausible.

#### 1. The FAC identifies, paragraph by paragraph, what the Popeyes POS scans during an in-store Rewards transaction.

The FAC alleges that, in the accused in-store Popeyes Rewards transaction, the Popeyes POS/cash-register system "scans or reads Popeyes product/menu/reward/offer/modifier barcode data, SKU data, PLU data, QR data, or equivalent product barcode data that identifies the Popeyes item or reward being purchased or redeemed and includes or is associated with the product price or modifier price." Dkt. 19 ¶ 19. It further alleges that the "same POS/cash-register scanner also scans the customer's Popeyes Rewards QR code or barcode" in the same transaction, and that the POS/register system "transmits both the product/menu/product-price data and the customer User ID Barcode data to Popeyes' vendor/POS server, Rewards server, or related online computer systems." *Id.* The FAC then expressly clarifies its theory: "the accused 'product barcode' is the Popeyes in-restaurant product, menu-item, modifier, reward, coupon, offer, SKU, PLU, or equivalent product-price barcode or code used by the Popeyes POS/cash-register system in the same in-store transaction in which the customer's Popeyes Rewards QR code or barcode is

scanned." *Id.* ¶ 20. The FAC adds that Wolverine does not rely on a product barcode from an unrelated third-party retail transaction. *Id.*

Those allegations satisfy *Bot M8* and *Disc Disease*. The FAC identifies the patent, the asserted claim, the accused workflow, the accused components (POS terminal, barcode/QR scanner, vendor/POS server, Rewards server, mobile app, in-restaurant Rewards interface), and the specific data categories Wolverine alleges Popeyes' POS scans or reads in the accused transaction. That is more than the pleading standard requires. *See Bot M8*, 4 F.4th at 1352–53; *Disc Disease*, 888 F.3d at 1260.

### 2. Popeyes' demand for an identified "specific product or menu-item" misstates the pleading standard and reads an unstated claim construction into Rule 12.

Popeyes argues that the FAC must identify any particular product or menu-item with a specific barcode that gets scanned. Dkt. 22 at 1, 7. That is not the pleading standard. *Disc Disease* and *Bot M8* require plausible allegations that the accused instrumentalities meet the claim, not a pre-discovery demonstration of which SKU, PLU, modifier code, or product-price database entry is read at the register on a given transaction. *Disc Disease*, 888 F.3d at 1260. The FAC plausibly alleges that the in-store Popeyes Rewards transaction involves the scanning or reading of Popeyes menu/product/product-price data through the POS, whether through a UPC, SKU, PLU, modifier code, button-triggered code, or analogous machine-readable mechanism that the POS reads, processes, and transmits. Dkt. 19 ¶¶ 19–20. The exact code structure and POS data flow Popeyes uses is information uniquely within Popeyes' possession, which discovery is designed to develop. *See Bot M8*, 4 F.4th at 1353.

Popeyes also embeds an unstated claim construction in its argument: that "product barcode" in claim 1 means a UPC printed on physical retail packaging and nothing else. The '689 patent does not support that construction. The specification describes barcodes generically as "the

6

typical optical machine-readable representation of data" and explains that the User ID Barcode is "derived from the conventional barcode" and "includes a special character, or characters, to identify it as a personal ID code and to distinguish it from barcodes that may incorporate data relating to products or goods." '689 patent, col. 5:30–38. The specification also expressly contemplates QR codes and other machine-readable codes as User ID Barcodes. *Id.* col. 6:1–14. Whether the "product barcode" limitation reaches Popeyes' in-restaurant menu/product/product-price codes is a claim-construction question, not a pleading defect. *Nalco*, 883 F.3d at 1349–50.

### 3. Popeyes' factual assertion that it "does not scan product barcodes in-store" is not properly before the Court on Rule 12.

Popeyes asserts as if it were undisputed that, had Wolverine "visit[ed] the Popeyes location five minutes away from its counsel's office," Wolverine "would know that Popeyes does not scan product barcodes in-store." Dkt. 22 at 1. That assertion is not in the FAC, is not judicially noticeable, and is squarely contradicted by the FAC's allegations. Dkt. 19 ¶¶ 19–20. On Rule 12, the Court accepts the FAC's well-pleaded facts as true; it does not credit a defendant's competing factual narrative. *Iqbal*, 556 U.S. at 678. If Popeyes wishes to put on evidence about the internal operation of its POS systems, what its registers scan, what its menu/product databases contain, how its POS communicates product-price data to Popeyes' vendor/POS and Rewards servers, and what data the POS transmits in an in-store Rewards transaction, that evidence belongs in discovery and summary judgment, not in a Rule 12 motion. *See Nalco*, 883 F.3d at 1349–50.

Counsel's customer-side observation of a register, even if true, would not foreclose the FAC's allegations. Modern restaurant POS terminals routinely read product/menu/product-price codes, modifiers, coupons, offers, SKUs, PLUs, or equivalent machine-readable identifiers when cashiers ring up items, when kitchen-display or order-handoff systems pass data, or when digital orders are processed. The FAC's allegations are plausible inferences from publicly available

7

information, Wolverine's pre-suit investigation, and the public-facing operation of Popeyes Rewards. Dkt. 19 ¶ 26. The FAC expressly explains that further detail concerning the internal operation of Popeyes' POS, scanner, Rewards, and server systems will be confirmed in discovery. *Id.*

### B. The Exhibit B claim chart is a non-binding preliminary infringement contention; it cannot defeat the FAC's well-pleaded allegations.

Popeyes repeatedly returns to a single image in Exhibit B, a Popeyes-branded dipping sauce bottle apparently sourced from a retail page, and argues that this image proves Wolverine has no plausible theory because the retail bottle is not sold inside Popeyes restaurants. Dkt. 22 at 1, 6–7. The argument fails three ways.

*First*, the FAC's operative allegations expressly disclaim reliance on any retail third-party product as the accused "product barcode." Dkt. 19 ¶ 20 ("Plaintiff does not rely on a product barcode from an unrelated third-party retail transaction as the product barcode for the accused in-store Popeyes Rewards transaction."). The Court considers the pleading as a whole and accepts well-pleaded factual allegations as true; it does not weigh the persuasive value of one exhibit image against the operative text. *Iqbal*, 556 U.S. at 678. Where exhibit content and operative allegations point in different directions, inferences are drawn for the pleader. *See Lifetime*, 869 F.3d at 1379.

*Second*, a claim chart attached to a complaint is a preliminary, non-limiting infringement contention. Its role is to give notice and a roadmap, not to fix the contours of the accused workflow at the pleading stage. The FAC says so on its face: "These allegations of infringement are preliminary and are therefore subject to change." Dkt. 19 ¶ 27. The Local Patent Rules of this District separately provide for infringement contentions that are exchanged and developed as the case proceeds. *See* E.D. Tex. P.R. 3-1.

*Third*, Popeyes' argument confuses an exemplar image with the accused workflow. The accused workflow is "the in-store Popeyes Rewards transaction workflow by which a Popeyes Rewards member uses a scannable Popeyes Rewards QR code or barcode at a participating Popeyes restaurant to earn and/or redeem rewards in connection with the purchase of Popeyes food items." Dkt. 19 ¶ 9. An image used elsewhere in the chart for illustrative purposes does not redefine that workflow. Construing the FAC as a whole and drawing reasonable inferences for Wolverine, the FAC plausibly alleges scanning of product/menu/product-price data inside Popeyes restaurants. *Id.* ¶¶ 19–20.

### C. The FAC plausibly alleges single-entity direct infringement and, in the alternative, attribution under Akamai.

Popeyes argues that the FAC is "vague and inconsistent" about who performs each method step. Dkt. 22 at 4. The FAC is neither. It pleads both a single-entity theory and an *Akamai* attribution theory — which is exactly how a careful patent owner pleads a method-claim case where steps are partly customer-facing. Pleading alternative theories is expressly permitted. Fed. R. Civ. P. 8(d)(2)–(3).

### *1. Single-entity direct infringement.*

The FAC pleads that Popeyes "directly infringes . . . by performing, directing, controlling, and/or causing performance of each step of the claimed method through the Popeyes Rewards in-restaurant transaction system, including Popeyes' mobile application and website, Popeyes Rewards accounts, Popeyes-controlled Rewards servers and databases, Popeyes point-of-sale ('POS') and cash-register systems, vendor/POS servers, barcode/QR scanners, in-restaurant receipt and approval systems, and participating Popeyes restaurants." Dkt. 19 ¶ 8. It then alleges that Popeyes "designs, specifies, administers, and controls the accused Popeyes Rewards transaction workflow," creating Rewards accounts, assigning unique member identifiers,

converting them to scannable QR codes or barcodes, storing them in Popeyes' Rewards servers, dictating how the code must be presented and scanned, configuring or requiring the configuration of POS and scanner systems at participating restaurants, determining the conditions for points and redemption, and causing the POS/register to receive and display approval, rejection, receipt, or transaction-completion signals. *Id.* ¶ 10. Those allegations describe single-entity performance through Popeyes' own systems, agents, and personnel. They are more than sufficient under *Bot M8* and *Disc Disease*.

### 2. Akamai attribution as an alternative theory.

In the alternative, the FAC pleads attribution under *Akamai*. It alleges that "Popeyes conditions participation in Popeyes Rewards and receipt of the Rewards benefits — including earning points, redeeming rewards, applying offers, discounts, free-food items, and receiving transaction credit ,on the participant performing the required Popeyes-specified steps in the required Popeyes-specified manner and timing." Dkt. 19 ¶ 11. It identifies the conditioned benefit (Rewards points, redemptions, offers, discounts, free items, transaction credit), the conditioned steps (enrolling in Rewards, accessing or storing the Rewards QR code, presenting that code at the register or payment window, completing an eligible in-store transaction, and having the code scanned in the Popeyes-prescribed checkout workflow), and the consequence of nonperformance (the customer does not receive the Rewards benefit). *Id.*

The FAC likewise alleges Popeyes' direction and control of participating restaurants, cashiers, and POS/rewards vendors — a requirement that participating restaurants use Popeyes-approved POS systems, Popeyes-approved scanner systems, Popeyes-approved menu/reward/product-price databases, Popeyes-approved in-store Rewards procedures, and Popeyes-controlled or Popeyes-specified servers. Dkt. 19 ¶ 12. It alleges that Popeyes "establishes

10

the timing and manner in which the customer's Rewards QR code or barcode is scanned, how product/menu/reward item data is entered or scanned, how the resulting transaction data is transmitted . . . , and how approval, rejection, reward credit, reward redemption, and receipt information is returned to the register." *Id.*

These allegations track the *Akamai* attribution framework limitation for limitation. *Akamai*, 797 F.3d at 1023. The Federal Circuit has applied that framework to defendants who design a system or program that conditions receipt of a benefit on participants performing specified steps in a specified manner. *See Travel Sentry*, 877 F.3d at 1379–81; *Eli Lilly*, 845 F.3d at 1365–66. Whether Popeyes in fact directs participating restaurants and POS vendors through the operational mechanisms Wolverine alleges is a merits question for discovery.

### 3. Popeyes' implicit reliance on Lyda-type cases is misplaced.

To the extent Popeyes relies (or will rely) on cases dismissing divided-infringement complaints, those cases turn on pleading defects not present here. *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339–40 (Fed. Cir. 2016), involved a complaint that alleged direction or control by unidentified relatives of an unidentified third party, with no factual content about the relationship, the conditioned benefit, the manner, or the timing. The FAC here is the opposite: it identifies the program (Popeyes Rewards), the benefit (points, redemptions, discounts, free items, transaction credit), the conditioned steps (enrollment, access or storage of the code, presentation, completion of an eligible transaction, scanning), the consequence of nonperformance (no benefit), and the technical mechanisms by which Popeyes establishes the manner and timing (Popeyes-approved POS systems, scanner systems, Rewards software, server interfaces, and product-price databases). Dkt. 19 ¶¶ 11–12. That is precisely the level of factual content *Akamai* requires at the pleading stage.

11

**D. The remaining limitations of claim 1 are pleaded with detail.**

To the extent Popeyes generically invokes "several claim limitations," Dkt. 22 at 2, the FAC pleads each. The FAC alleges that Popeyes:

- assigns a unique Rewards member identifier, account identifier, token, UUID, digital ID number, or other personal code (1(a)) — Dkt. 19 ¶ 14;

- converts that identifier into a scannable QR code, barcode, or equivalent machine-readable code, including distinguishing coding, prefixes, delimiters, special characters, embedded fields, or other non-product-identifying data (1(b)) — id. ¶ 15;

- stores the code on the customer's mobile device and stores the personal code and account data in Popeyes' Rewards servers, databases, online systems, or vendor/POS systems (1(c)) — id. ¶ 16;

- creates a Popeyes Rewards account corresponding to that personal code (1(d)) — id. ¶ 17;

- credits points, reward credits, promotional value, redemption credits, discounts, offers, or other electronic value into the account, which functions as account funds or a credit limit by setting the value the customer may apply (1(e)) — id. ¶ 18;

- detects the Rewards code at the vendor/POS server, distinguishes it from product/menu/product-price data, and forwards the identifier and the applicable price to Popeyes' Rewards servers (1(g)) — id. ¶ 21;

- compares the applicable price with available points, credits, or redeemable value, and approves the transaction when sufficient value is available (1(h)) — id. ¶ 22;

- forwards the approval, redemption, crediting, receipt, or transaction-completion signal to the POS/register (1(i)) — id. ¶ 23; and

12

- repeats the workflow for subsequent eligible in-store Rewards transactions (final step)
  — id. ¶ 24.

These are factual allegations tied to specific Popeyes Rewards infrastructure. Whether discovery confirms the precise data formats, server calls, account-crediting logic, and approval-signal implementation Wolverine alleges is a merits question, not a pleading defect. *Bot M8*, 4 F.4th at 1352–53.

### E. The FAC plausibly states induced and contributory infringement.

Popeyes' motion does not separately attack the indirect-infringement claims. To the extent the Court reaches them, the FAC plausibly pleads both inducement and contributory infringement.

*Inducement* under 35 U.S.C. § 271(b) requires direct infringement, knowledge of the patent, and specific intent. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). The FAC alleges each. It alleges Popeyes' post-suit knowledge of the '689 patent and the asserted claims as of service of the original Complaint and its exhibits. Dkt. 19 ¶ 28. It alleges that, with that knowledge, Popeyes continues to provide, maintain, advertise, and operate the Popeyes Rewards program; instruct customers to enroll, access or store the Rewards QR code, present that code at participating restaurants, and complete eligible transactions to earn or redeem benefits; require participating restaurants, cashiers, franchisees, operators, and POS/rewards vendors to use Popeyes-approved POS systems, scanners, Rewards software, server interfaces, menu/product-price databases, and transaction procedures; and configure the accused systems to perform the accused scanning, transmitting, detecting, comparing, approval, and register-completion steps. *Id.* The FAC also alleges Popeyes' commercial benefit from the program — increased sales, customer loyalty, customer-data

13

collection, Rewards engagement, repeat purchases, and reduced checkout friction — supporting specific intent. *Id.* ¶¶ 25, 28.

*Contributory infringement* under 35 U.S.C. § 271(c) requires a material component, especially made or adapted for use in an infringement, that is not a staple article suitable for substantial non-infringing use. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). The FAC pleads each element. It identifies the contributory components with precision: the Popeyes Rewards in-store scan-and-redeem components, the Popeyes Rewards User ID Barcode or QR code generated for a particular Rewards account, the Popeyes Rewards account and account-token infrastructure, the in-store POS Rewards scanning module, and the Popeyes POS/vendor-server and Rewards-server interfaces, APIs, databases, and transaction protocols that receive product/menu/product-price data and User ID Barcode data, compare the applicable price or redemption requirement, and return approval, redemption, crediting, receipt, or transaction-completion signals. Dkt. 19 ¶ 29. The FAC alleges these components are a material part of the claimed invention, are especially made or adapted for the accused workflow, and are not staple articles, expressly disclaiming reliance on general-purpose smartphones, general-purpose barcode scanners, or the Popeyes mobile application standing alone. *Id.* Those allegations meet the *Bill of Lading* standard for indirect infringement at the pleading stage. 681 F.3d at 1337.

### F. Popeyes' authorities — Ruby Sands and ALD — do not require dismissal.

Popeyes leans on *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016), and *ALD Soc. LLC v. Verizon Commc'ns, Inc.*, No. WA-22-CV-1011-FB, 2023 WL 11915724 (W.D. Tex. Sept. 30, 2023). Neither helps Popeyes.

*Ruby Sands* dismissed a complaint that the court found contained no factual content tying the accused product to specific claim limitations and was inconsistent with the asserted claim's

requirements. 2016 WL 3542430, at *3–4. The FAC here ties Popeyes Rewards to each limitation of claim 1 paragraph by paragraph, Dkt. 19 ¶¶ 13–24, supplemented by a claim chart with Popeyes' own Rewards materials and images, Dkt. 19-2.

*ALD* stands for the proposition that a plaintiff cannot satisfy *Iqbal/Twombly* simply by reciting claim elements and pleading facts inconsistent with the claims' requirements. 2023 WL 11915724, at *3. The FAC does much more. It identifies the accused workflow, the accused components, the accused data categories, the accused servers, the accused account logic, the accused approval/receipt signals, and the accused attribution theory — each tied to specific allegations supported by publicly available Popeyes Rewards materials. Dkt. 19 ¶¶ 8–29; Dkt. 19-2. Popeyes' disagreement with the merits of that theory is not a Rule 12 defect.

Popeyes' footnote argument that customers cannot "conduct purchases" with Rewards points and that the Rewards QR code is scanned only to earn points after purchases are made, Dkt. 22 at 7 n.1, also misreads both claim 1 and the FAC. Claim 1 does not require that every purchase be paid for entirely with Rewards points or that the User ID Barcode be the only payment instrument. It requires a purchase transaction that includes the recited scanning, transmission, comparison, and approval steps. The FAC pleads exactly that workflow, including the redemption path where Popeyes Rewards points are applied. Dkt. 19 ¶¶ 18, 22. Whether claim 1 reaches the earn path, the redemption path, or both is a merits and claim-scope question — not a pleading defect.

## VI. ALTERNATIVELY, ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE WITH LEAVE TO AMEND.

If the Court were to identify any pleading deficiency, dismissal with prejudice would be improper. Rule 15(a)(2) commands that leave to amend "freely" be given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fifth Circuit

15

requires a strong showing that the asserted deficiencies cannot be cured before denying leave. *Great Plains Tr.*, 313 F.3d at 329; *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).

Three points justify leave to amend over dismissal with prejudice here. First, Wolverine has amended only once, in direct response to Popeyes' initial motion, and added detailed allegations directed to the specific deficiency Popeyes raised. *Compare* Dkt. 1 *with* Dkt. 19. Second, the operative facts on which Popeyes' motion turns, the internal operation of Popeyes' POS systems, the data those systems read, the Popeyes-controlled server architecture, the protocols by which approval and redemption signals are returned to the register, and the Popeyes-imposed requirements on participating restaurants and POS vendors, are uniquely within Popeyes' possession. Wolverine is entitled to discovery on those facts before any final adjudication of the pleading. Third, Popeyes' Motion confirms it understands the accused workflow and the asserted claim; any pleading detail the Court might find lacking could readily be added by amendment, and amendment would not be futile.

## VII. CONCLUSION

The FAC plausibly states a claim for direct infringement of claim 1 of the '689 patent. It pleads, in the alternative, divided-infringement attribution under *Akamai* and induced and contributory infringement under 35 U.S.C. §§ 271(b) and (c). Popeyes' Motion (Dkt. 22) should be denied. In the alternative, leave to amend should be granted.

Dated: May 28, 2026

Respectfully submitted,

Ramey LLP

/s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)

16

Attorneys for Plaintiff Wolverine Barcode
IP, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2026, the foregoing was filed using the Court's CM/ECF

system, which will serve all counsel of record who have appeared in this matter and have

consented to electronic service.

/s/ William P. Ramey, III
William P. Ramey, III

17