IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WOLVERINE BARCODE IP, LLC, | |
| **Plaintiff,** | Civil Action No. 2:26-cv-00023 |
| v. | **JURY TRIAL DEMANDED** |
| POPEYES LOUISIANA KITCHEN, INC., | |
| **Defendant** | |

**DEFENDANT POPEYES LOUISIANA KITCHEN, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS
<u>FOR FAILURE TO STATE A CLAIM</u>**

## I.      INTRODUCTION

The Court should dismiss Wolverine Barcode's Amended Complaint. Wolverine Barcode does not dispute that its '689 Patent requires a product barcode, distinct from a User ID Barcode. The claim is explicit: "each purchase includes scanning product barcodes." '689 Patent, cl. 1.

Popeyes is not asking the Court to decide, at the Rule 12 stage, whether Popeyes scans barcodes in its restaurants (though it does not). Popeyes *is* asking the Court to hold Wolverine Barcode to the pleading sufficiency standards explained by the Supreme Court and the Federal Circuit. It is not enough to make conclusory statements and conclude that Popeyes infringes. Instead, Wolverine Barcode must provide plausible allegations that support its claim. Of course, the fact that Popeyes does not scan product barcodes in-store makes that task difficult for Wolverine Barcode. But plaintiffs are held to a certain standard precisely to avoid this situation.

Initially, Wolverine Barcode pointed to a retail product sold at Walmart—not at Popeyes. Wolverine Barcode amended its Complaint, but rather than identifying even one product that has its barcode scanned in restaurants, or instead of otherwise providing plausible allegations to support its claim, Wolverine Barcode asserted without support that "the Popeyes POS/cash-register system scans or reads Popeyes product/menu/reward/offer/modifier barcode data, SKU data, PLU data, QR data, or equivalent product barcode data that identifies the Popeyes item or reward being purchased or redeemed and includes or is associated with the product price or modifier price." Dkt. 19 ¶ 19. In essence, Wolverine Barcode says *something* must get scanned. This is not a plausible allegation.

Much of Wolverine Barcode's opposition is spent shadowboxing with arguments Popeyes did not raise. The Court should ignore those portions as they are irrelevant to the Motion. Wolverine Barcode did not plausibly allege infringement—the Court should dismiss with prejudice.

## II.     ARGUMENT

### A.     Wolverine Barcode's direct infringement allegations are conclusory and need not be credited.

Wolverine Barcode has had multiple opportunities to plausibly allege that Popeyes uses a product barcode, and to identify where it did so. It has not done either, and cannot, because Popeyes restaurants do not scan a product barcode. Had Wolverine Barcode performed even a minimal investigation before filing suit, such as by visiting the Popeyes location two miles from its counsel's office, it would know that Popeyes does not scan product barcodes. Instead, Wolverine Barcode pointed to a bottle of Popeyes sauce sold at Walmart, not at Popeyes' restaurants.

After Popeyes pointed out its error, Wolverine Barcode left its claim chart unamended, and instead added the bare, unsupported allegation in its Amended Complaint that "the accused 'product barcode' is the Popeyes in-restaurant product, menu-item, modifier, reward, coupon, offer, SKU, PLU, or equivalent product-price barcode or code used by the Popeyes POS/cash-register system[.]" Dkt. 19 ¶ 20. This is no different than mere recitation of the claim limitation (product barcode) and a conclusion that Popeyes meets the limitation, which is insufficient. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("Accordingly, a plaintiff cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements.").

*Bot M8* supports dismissal. In *Bot M8*, the Court affirmed dismissal of claims related to two patents where the allegations were "conclusory and at times contradictory." *Id.* at 1353. For one patent, the Federal Circuit agreed with the district court that the plaintiff "failed to provide factual allegations supporting a plausible inference" that defendant's product infringed the asserted claim. *Id.* at 1354. For the second patent, the Federal Circuit again emphasized that "mere recitation of claim elements and corresponding conclusions, without supporting factual

allegations, is insufficient to satisfy the *Iqbal/Twombly* standard." *Id.* at 1355. Under *Bot M8*, Wolverine Barcode has not carried its burden to plausibly allege direct infringement.

*Disc Disease* is likewise distinguishable. In *Disc Disease*, "[t]he complaint specifically identified the three accused products—by name and by attaching photos of the product packaging as exhibits[.]" *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). But here, Wolverine Barcode identified only a bottle of Popeyes sauce sold at Walmart in its claim chart—a claim chart it now disavows and asks the Court not to consider. Dkt. 31 at 8–9 ("a claim chart attached to a complaint is a preliminary, non-limiting infringement contention."). Wolverine Barcode still has not identified any product with a barcode that is scanned in a Popeyes restaurant, stating only that "the Popeyes POS/cash-register system scans or reads Popeyes product/menu/reward/offer/modifier barcode data, SKU data, PLU data, QR data, or equivalent product barcode data that identifies the Popeyes item or reward being purchased or redeemed and includes or is associated with the product price or modifier price." Dkt. 19 ¶ 19. This is not a plausible allegation of direct infringement. Unlike in *Disc Disease*, there are no "photos of the product packaging" included as exhibits—except for the sauce bottle Wolverine Barcode now tells the Court to ignore as merely "exemplary."

Popeyes is not asking that Wolverine Barcode prove its case at the pleading stage. It is not asking for an identification of "which SKU, PLU, modifier code, or product-price database entry is read at the register on a given transaction." Dkt. 31 at 6. Popeyes argues simply that Wolverine Barcode has not shown that *any* scanning is done at the register—it has only *said* that scanning is done. Conclusory statements are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

### B.      There is no claim construction dispute.

Wolverine Barcode's argument that Popeyes' Motion turns on claim construction is one of many red herrings presented in the Opposition. Wolverine Barcode argues that "Popeyes also embeds an unstated claim construction in its argument: that 'product barcode' in claim 1 means a UPC printed on physical retail packaging and nothing else." Dkt. 31 at 6. Popeyes does no such thing. Popeyes has not proposed a construction for the term "product barcode"—Popeyes has merely pointed out that Wolverine Barcode has not plausibly alleged that any product barcode is scanned. The majority of Wolverine Barcode's response on this point argues about the "User ID Barcode." *Id.* at 7. But Popeyes' argument is about the *product barcode*. All indications in the specification and in the claims point to the "product barcode" being a typical product barcode used in everyday commerce, as is evident from the fact that the patent specifically distinguishes the User ID Barcode from "barcodes that may incorporate data relating to products or goods." '689 Patent at 5:30–38.

### C.      Wolverine Barcode's other arguments, including about *Akamai* and indirect infringement, are beside the point.

Wolverine Barcode dedicates much of its Opposition to explaining why the Court should not dismiss because of divided infringement, or because of indirect infringement. *See* Dkt. 31 at 9–11; 13–14. Popeyes did not move to dismiss on these grounds, and Wolverine Barcode's arguments are thus irrelevant.

## III.    CONCLUSION

Wolverine Barcode has already had one chance to amend. It could have performed a sufficient pre-suit investigation, learned that Popeyes does not practice the method, and withdrawn its lawsuit. Instead, it chose to reassert the same claims while failing to cure the deficiencies in its original Complaint. Wolverine Barcode has not crafted a plausible theory of direct infringement

by Popeyes. *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *4 (E.D. Tex. June 28, 2016) ("[T]he Court is left to wonder whether [Wolverine Barcode] performed a thorough pre-suit investigation, as required by the Federal Rules, to craft a plausible infringement theory before filing its complaint."). The Amended Complaint should be dismissed with prejudice.

Dated: June 12, 2026

Respectfully submitted,

By: */s/ Lance E. Wyatt*
     Neil J. McNabnay
     Texas Bar No. 24002583
     mcnabnay@fr.com
     Lance E. Wyatt
     Texas Bar No. 24093397
     wyatt@fr.com
     Riley J. Green
     Texas Bar No. 24131352
     rgreen@fr.com
     **FISH & RICHARDSON P.C.**
     1717 Main Street, Suite 5000
     Dallas, Texas 75201
     Telephone (214) 747-5070
     Facsimile (214) 747-2091

**COUNSEL FOR DEFENDANT**
**POPEYES LOUISIANA KITCHEN, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on June 12, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Lance E. Wyatt*
Lance E. Wyatt

6