IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| WOLVERINE BARCODE IP, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 2:26-cv-00023-RWS-RSP |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| POPEYES LOUISIANA KITCHEN, INC., | § | |
| | § | |
| Defendant. | § | |

### PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## I.      INTRODUCTION

Popeyes' reply gives away the motion. Popeyes concedes that it "is not asking the Court

to decide, at the Rule 12 stage, whether Popeyes scans barcodes in its restaurants." Dkt. 35 at 1.

With that concession, the only question is whether the First Amended Complaint states a

plausible claim on its own allegations, taken as true. It does. Yet the reply answers that question

with Popeyes' own version of the facts, that it does not scan product barcodes in-store,

supposedly confirmable by a visit to a restaurant near counsel's office. Dkt. 35 at 1–2. A

defendant does not get to supply contrary facts on a motion to dismiss.

The reply narrows the dispute in two further ways that favor Wolverine. Popeyes says it

never proposed a construction of "product barcode," Dkt. 35 at 4, and then proposes one,

insisting the term means a typical retail barcode and excludes the in-store menu, modifier, SKU,

PLU, and product-price codes the FAC identifies. That is a claim-construction argument, and the

Court should not resolve it against the pleader now. Popeyes also confirms it did not move to

dismiss the induced, contributory, or divided-infringement theories. Dkt. 35 at 4. Those claims

1

are not before the Court and survive regardless of how the Court rules on single-entity direct infringement.

The motion should be denied. If the Court finds any gap, the remedy is leave to amend, not dismissal with prejudice.

## II.    ARGUMENT

### A.    Popeyes concedes the scanning question is not for Rule 12, then asks the Court to decide it anyway.

Popeyes says it seeks only to hold Wolverine to the pleading standard and is "not asking the Court to decide, at the Rule 12 stage, whether Popeyes scans barcodes in its restaurants." Dkt. 35 at 1. The Court could not decide that question now in any event. Whether Popeyes' point-of-sale systems read product-price data in an in-store Rewards transaction is a fact, and on a Rule 12 motion the FAC's allegation that they do is taken as true. Dkt. 19 ¶¶ 19–20.

Having conceded the point, Popeyes spends its reply contradicting it. It asserts as fact that Popeyes does not scan product barcodes in-store, repeats that counsel could confirm this by visiting a nearby restaurant, and adds the parenthetical "(though it does not)." Dkt. 35 at 1–2. None of that appears in the FAC, none is judicially noticeable, and all of it is contradicted by the pleading. The Supreme Court's instruction is the opposite of what Popeyes asks: well-pleaded allegations are assumed true, and the court draws on its experience and common sense in testing plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Popeyes' competing account of how its own registers work belongs at summary judgment, after discovery into its POS architecture, its menu and product-price databases, and the data its systems transmit to its Rewards servers. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349–50 (Fed. Cir. 2018) (factual disputes over the operation of the accused process are not suitable for resolution on a motion to dismiss).

2

**B.**    **The FAC is not conclusory; it pleads what is scanned, where, and where the data goes.**

Popeyes recasts its argument as a complaint that Wolverine has only said that scanning is done, not that anything in particular is scanned. Dkt. 35 at 1, 3. The FAC says considerably more. It alleges that, in the in-store Rewards transaction, the Popeyes POS/register reads Popeyes product, menu-item, modifier, offer, coupon, SKU, PLU, or equivalent product-price data identifying the item being purchased or redeemed; that the same scanner reads the customer's Rewards QR code or barcode in that same transaction; and that the register transmits both the product-price data and the User ID Barcode data to Popeyes' vendor/POS and Rewards servers. Dkt. 19 ¶ 19. It identifies the actor, the transaction, and the data flow. Those are factual allegations, not a bare recital that the limitation is met.

That is more than *Disc Disease* required. There, the Federal Circuit reversed a Rule 12 dismissal where the plaintiff did no more than identify the accused products and allege they met each and every element of at least one claim, because that gave fair notice in a case of simple technology. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). Popeyes reads the case to require attached product photographs and a named, specific product. It holds no such rule. The photographs were how that plaintiff identified its accused products, not a pleading element every patentee must satisfy.

*Bot M8* forecloses Popeyes' real demand. A patentee is not required to plead infringement on an element-by-element basis and need not prove its case at the pleading stage. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). The court reversed dismissal of two patents precisely because the district court demanded too much, an explanation of every element of every claim or why it could not be given. *Id.* Popeyes asks for the same thing in different words: identification of the single SKU, PLU, or product-price entry read at a

3

particular register on a particular transaction. The FAC need not allege that, and could not be expected to before discovery, because the precise code structure and data flow in Popeyes' POS are uniquely within Popeyes' possession. *Id.* at 1353. The line *Bot M8* drew is between reciting elements and pleading facts; the FAC pleads facts about what the POS reads and transmits.

Popeyes' "disavowed claim chart" theme does not change this. Wolverine described its Exhibit B chart as a preliminary, non-binding infringement contention because that is what it is, a P.R. 3-1 contention subject to change, Dkt. 19 ¶ 27, that will be developed as the case proceeds. Saying so does not delete the FAC's operative allegations in ¶¶ 19–20. And the sauce-bottle image Popeyes fixates on was an illustrative exemplar of a product barcode, not the accused instrumentality; the FAC expressly disclaims reliance on a product barcode from an unrelated third-party retail transaction. Dkt. 19 ¶ 20. The accused instrumentality is the in-store Rewards workflow the FAC defines, Dkt. 19 ¶ 9, not a single picture in a chart.

C.    **Popeyes' reply confirms a claim-construction dispute it says does not exist.**

Popeyes insists it has not proposed a construction for product barcode. Dkt. 35 at 4. In the next breath it proposes one: that the term means a typical product barcode used in everyday commerce, drawn from specification language distinguishing the User ID Barcode from barcodes that may incorporate data relating to products or goods. Dkt. 35 at 4. That is an argument that the term excludes the in-store menu, modifier, SKU, PLU, offer, and product-price codes the FAC alleges the Popeyes POS reads. Whether the term reaches those codes is the central scope question in the case, and it cannot be resolved against Wolverine on the pleadings. *Nalco*, 883 F.3d at 1349–50.

The specification language Popeyes invokes does not carry the weight Popeyes places on it. By Popeyes' own account, the passage distinguishes the User ID Barcode from product barcodes by the User ID Barcode's special character, the very feature the FAC alleges the

Popeyes Rewards code possesses. Dkt. 19 ¶¶ 15, 20. Nothing in the cited passage limits "product barcode" to a UPC printed on retail packaging, and Popeyes identifies no construction adopted in this or any case that does. The Court need not construe "product barcode" to deny the motion. It need only decline Popeyes' invitation to narrow the term and then dismiss under the narrowed reading. That is not how Rule 12 works.

### D. Popeyes concedes it did not move against the indirect or divided-infringement theories.

Popeyes now states that it did not move to dismiss on divided infringement or on induced or contributory infringement, and that Wolverine's discussion of those theories is beside the point. Dkt. 35 at 4. Two consequences follow. First, the Section 271(b) and (c) claims and the attribution theory are not challenged by this motion and remain in the case whatever the Court does with single-entity direct infringement. Second, Wolverine did not raise those theories to shadowbox. Popeyes' motion argued that the FAC was vague and inconsisten" about whether Popeyes or its customers perform the steps and how. Dkt. 22 at 3–4. Wolverine answered the argument Popeyes made and pleaded its single-entity and attribution theories in the alternative, as Rule 8(d) allows. Fed. R. Civ. P. 8(d)(2)–(3). The single-entity theory stands on its own: the FAC alleges that Popeyes performs or causes the performance of every step through its own systems, accounts, servers, and personnel. Dkt. 19 ¶¶ 8, 10.

### E. Any dismissal should be without prejudice, with leave to amend.

Popeyes again asks for dismissal with prejudice. That is not warranted. Wolverine has amended once, in response to Popeyes' first motion, and the facts Popeyes says are missing, how its registers and servers actually process an in-store Rewards transaction, are in Popeyes' hands, not Wolverine's. If the Court finds any allegation wanting, leave to amend should be granted,

because amendment would not be futile and there is no undue delay, bad faith, or prejudice. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.    CONCLUSION

Taken as true, the FAC alleges that Popeyes' in-store Rewards transaction scans product-price data and the customer's User ID Barcode and transmits both to Popeyes' servers. That states a plausible claim. Popeyes' contrary facts and its narrowing of "product barcode" are for another day. The Motion (Dkt. 22) should be denied. In the alternative, any dismissal should be without prejudice and with leave to amend.

Dated: June 19, 2026

Respectfully submitted,

Ramey LLP

/s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)

Attorneys for Plaintiff Wolverine Barcode
IP, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2026, the foregoing was filed using the Court's CM/ECF system, which will serve all counsel of record who have appeared in this matter and have consented to electronic service.

/s/ William P. Ramey, III
William P. Ramey, III